WIRT ADAMS, STATE REVENUE AGENT, *v.* CHARLES H. CLARKE.

1. TAXATION. *Solvent credits. Purchase money of land.*

   A debt due for the purchase money of land is taxable to the cred-
   itor, if it be a solvent credit which he regards as probably collecti-
   ble, although the debtor be assessed with the land at its full value,
   and pays taxes thereon.

2. SAME. *Debts arising from mercantile business. Money employed in
   merchandise.*

   Solvent credits deemed probably collectible, arising from a mercan-
   tile business, are taxable as such after the expiration of the year
   in which they were contracted; thereafter they are not covered
   by an assessment of money employed in merchandise.

3. SAME. *Deliberate undervaluation. Approval of assessment. Res adju-
   dicata. Back taxes.*

   If a taxpayer, without making the oath to his assessment required
   by law, deliberately undervalue his taxable solvent credits, and
   the board of supervisors, being unadvised of the fact, approve the
   assessment, the judgment of the board is not *res adjudicata* under
   code 1892, § 3787, providing that the approval of an assessment by
   the board shall be conclusive of its validity, and the taxpayer may
   be assessed for back taxes on his solvent credits which wrongfully
   escaped taxation. CALHOON, J., dissented.

4. SAME. *Money. Code 1892, § 3768. Laws 1894, ch. 34, sec. 3.*

   Money on hand, on deposit, or loaned is not embraced in an assessment
   for "amount of indebtedness which he (the taxpayer) regards as
   probably collectible," and the approval of such an assessment
   does not preclude a subsequent assessment of money which has
   escaped taxation under code 1892, § 3768, authorizing the assessor
   to assess property which was unassessed for the previous year, or
   laws 1894, ch. 34, sec. 3, providing that the revenue agent may
   cause property which has escaped taxation to be assessed.

5. SAME. *How far approved assessment conclusive. Code 1892, § 3787.
   Property not listed.*

   The approval of an assessment by the board of supervisors is not
   conclusive that the taxpayer has listed, or that the roll contains

all of the taxable property owned by him. Such an approval, under code 1892, § 3787, determining its effect, in the absence of fraud, is conclusive as to the validity of the assessment as against the taxpayer that he is liable for the taxes on the property shown on the roll, and as against the taxpayer and the public that the value of the enumerated property is there correctly given.

6. SAME. *What necessary to res adjudicata.*

The approval of tax assessments, so far as respects *res adjudicata*, rests upon the same basis as other judgments, and he who claims the approval as *res adjudicata* must show that all of his taxable property was passed upon by the board of supervisors; property not brought to the attention of the board is not assessed at all by a judgment approving an assessment of other property.

7. SAME. *Lists. Code* 1892, § 3761. *Solvent credits. "Property not otherwise enumerated."*

The tax assessment lists, provided for by code 1892, § 3761, places taxable solvent credits on the same basis as "property not otherwise enumerated," and the fact that a taxpayer has returned a part of his solvent credits raises no presumption that he has returned all of them. CALHOON, J., dissented.

FROM the circuit court of Yazoo county.

HON. ROBERT POWELL, Judge.

Adams, state revenue agent, appellant, was the plaintiff in the court below; Clarke, appellee, was defendant there. The case arose from proceedings on notice of the state revenue agent against Clarke for the assessment of property omitted from his assessment list.

Section 3, ch. 34, laws 1894, contains the following provisions: "After the expiration of the fiscal year in which taxes become due, should the revenue agent discover that any person, corporation, property, business, occupation, or calling has escaped taxation by reason of not being assessed, it shall be his duty to give notice to the tax collector in writing, and the collector shall within ten days thereafter make the proper assessment by way of an additional assessment on the roll or tax list in his hands, and give ten days' notice, in writing, to the person or corporation whose property is assessed, and all objec-

tions to such assessments shall be heard at the next meeting of the board of supervisors of counties, or board of mayor and aldermen of municipalities."

Acting under the provisions of this law, the state revenue agent, Adams, gave notice to the tax collector of Yazoo county that solvent credits belonging to appellee, Clarke, had escaped taxation for the year 1900. The collector made an assessment against Clarke of $20,000, itemizing the assessment, giving the names of the parties indebted to Clarke, and the amount of their indebtedness; one item being for a balance due for lands sold by Clarke, others being for sums due appellee arising from his mercantile business, he being a merchant doing a supply business. Appellee appeared and filed his objections before the board of supervisors to the assessment, assigning, among other objections, that he had already been assessed by the proper authorities for the amount of solvent credits for the year 1900, and that said sums had not escaped taxation for that year. The board of supervisors sustained the objections, and discharged the assessment, and from that judgment the revenue agent appealed to the circuit court. On the trial in that court it was shown that appellee had been assessed with $5,000 of solvent credits for the year 1900. The court held that appellee, having been assessed with $5,000 solvent credits due and probably collectible for the year 1900, and said assessment having been approved by the board of supervisors, was *res adjudicata,* and conclusive on the state, and the assessment was discharged. The revenue agent appealed to the supreme court.

The opinion contains a further statement of the facts.

*Tim E. Cooper,* for appellant.

A debt due to the vendor is taxable, although the vendee has been taxed on the land. Wetley on Taxation, 126; *Provine* v. *Jacobs,* 19 N. W. (Ia.), 861; *Griffin* v. *Peebles,* 184 Ill., 275; *Rheinbolt* v. *Rainc,* 39 N. E. (Ohio), 145.

Our scheme of taxation of personal property is an unusual

one; a day certain, the 1st of February, is fixed as the period of time to which assessments are to be referred. In whatever shape property exists on that day it is to be assessed and taxed.

The merchant on that day, or as of that day, is assessed with the amount of capital, money, employed in merchandising— *i. e.,* invested on that day in merchandise. This does not include his money on hand, or on deposit or loaned; nor does it include the amount of indebtedness which he regards as probably collectible. They are to be assessed and taxed just as the money or solvent credits of others.

If during the fiscal year in which the merchant is assessed for his merchandise, such merchandise is sold to customers on credit or for cash, neither the money nor the credit is again taxable during that year. The mere transmutation from merchandise to money or credits does not subject to another assessment. But when another period for taxation has arrived, money or solvent credits then owned are assessible as such, regardless of the source from which it has been realized.

The statute bears upon its face unmistakable evidence of the legislative purpose that credits shall be dealt with as such, disassociated from other subjects of taxation. Experience has shown that as long as they were not specialized and separated from other property of a visible, tangible nature, they were nonexistent for purposes of taxation. It may be doubted whether such property will ever be reached in considerable amounts until each item is required to be listed and valued separately. But certainly a decided advance was made when the statute was so framed as to require not only a distinct classification of credits, but also a distinction between those for money loaned, and other credits arising from business transactions.

It is known to the court as a matter of general information that a very large percentage of credits other than those for money loaned arise from the business of merchants. It cannot be assumed that the provision for the separate assessment of such property was intended to apply only to those classes hold-

ing a relatively insignificant proportion of solvent credits, while merchants owning probably ninety-five per centum of the whole should be the only class excluded.

An assessment may be defined as the listing and valuation of property under fixed laws for the purpose of taxation.

Our constitution provides, sec. 112, that "property shall be taxed in proportion to its value . . . Property shall be assessed for taxes under general laws and by uniform rules according to its value."

Under our scheme of taxation a tax roll of property is made by the assessor from lists made by the taxpayer under oath, and the rolls are returned to the board of supervisors of the several counties, which boards equalize the assessments, and may add to it property not shown thereon, and the rolls when approved pass into the hands of the tax collector as authority to collect the taxes shown thereby to be due.

[Here counsel's brief contained the quotation from it found in the opinion of the court.]

In the court below it was said that the assessor or the board had authority to add to the roll "any money on hand, on deposit, or loaned" not returned by the taxpayer, and that as this was not done, it is now conclusively settled that there was none such. This contention proves too much. There was like authority to add any horse or mule or other property not returned. If the rule of conclusiveness is applied to all omitted property, § 3798, code 1892, is abrogated. If it does not apply to money, two different rules are provided; rules which when applied give the same action of the authorities conclusive effect as the one class of property, and no effect as to all other property. And this construction is sought to be placed upon legislation enacted under a constitution which imperatively enjoins that "property shall be assessed for taxes under general laws and by uniform rules according to its true value."

Before the construction contended for by the appellee can be adopted, the court will perceive that not only a question of

legislative purpose, but also one of legislative power is presented.

As to owners of certain classes of property the failure to list for assessment does not protect the property from subsequent taxation; as to another class the failure to assess does not protect. We must attribute to the legislature a purpose of providing "uniform rules" as prescribed by the constitution. It is no answer to say that other property has ear-marks, and that money has none. The fact may be material when the convenience of necessities of commerce and trade are considered. It cannot be influential in construing a statute enacted in obedience to a constitutional command that whatever rule is applied to one sort of taxable property must be applied to all.

Nor is it possible to apply one rule to money on hand, and another to money on deposit, or to money loaned. They are dealt with in the same sentence, and are assessable on the same list. As has been hereinbefore suggested, the legislature for the purpose of exposing this character of property to taxation has separated it from tangible property having ear-marks, and has again separated "money on hand, on deposit, or loaned" from other credits thought to be collectible. The evident purpose of this separation and particularization of this sort of property is to facilitate and make certain its subjection to taxation; to uncover and subject. The construction of the statute contended for by the appellee is that a safe, snug, and secure retreat was intended to be afforded. That while the clearly expressed provision (code 1892, § 3709), that property escaping taxation shall be subsequently assessable is applicable to everything else, it has no application to that class of property which finds easiest hiding, and is most difficult of discovery. Where shall the line be drawn to divide the protected from the nonprotected? Shall $500 in coin or currency in the strong box escape, while the mule in the plow is taxed? Or does it run between the money in the strong box of the owner and that deposited i nthe vaults of the banker? If neither mark the dis-

tinction, does it arise between money on hand and money loaned, or between money loaned and "amount of indebtedness to the party assessed which he regards as probably collectible?

The difficulty lies not only in marking the line of separation, if any such was within the legislative purpose, but of so construing the statute as to reach the conclusion that the legislature intended to make any distinction. Whenever the court shall reach the conclusion that a different and not a uniform rule was intended to be prescribed, I concede that the court must, as best it can, discover to what property one rule shall apply, and to what the other. It is not difficult, I submit, to deal with the statute as providing one rule applicable to all property alike. It is more difficult to make that rule effective against intangible than against tangible property; but the difficulty of practicable application does not make doubtful the legislative purpose as expressed in the statute.

In the court below counsel relied upon the decision of this court in the case of *State* v. *Bank of Oxford,* 78 Miss., 532, and on the case therein cited of *Atwood* v. *Cowen,* 111 Ill., 481.

In *Atwood* v. *Cowen* the court held that under a statute authorizing the assessment of "any real or personal property which had been omitted from assessment in previous years," solvent credits could not be assessed.

This decision is so manifestly erroneous that it could not be followed in this state, and in fact was repudiated as authority by the supreme court of Illinois in subsequent cases. In *Sellars* v. *Barnett,* 185 Ill., it was decided in direct opposition to the decision in *Atwood* v. *Cowen,* that omitted credits could be assessed. In the latter case the court gave another reason than that given in *Atwood* v. *Cowen,* and held that where some credits had been assessed others could not be added. The latter case, while repudiating the first, does not support the contention of appellees counsel under the Illinois statute. But in *Morrison* v. *Jones,* 150 Ill., it was held that unless the tax-

payer had on his part complied with the provisions of their revenue act, secs. 24 and 29, other credits might be added.

An examination of the statute of Illinois will disclose to the court that the decisions of the courts of that state in the construction of its statutes are not of much value in the construction of our statute. The assessor there seems to be the officer who acts judicially with the taxpayer in assessing solvent credits.

In the *Bank of Oxford case,* this court held that under the statute assessing the surplus of the bank, the value of that surplus having been adjudicated by the board, could not be afterward reassessed. But that was a totally different question from that now presented. The surplus of the bank was the aggregated subject of taxation. The solvent credits of a bank are not taxed, for the reason that the business of the bank is to deal in money and credits, and there is a constant mutation occurring. A stock of merchandise is taxed in solid. It is an integrated aggregation of thousands of items, and taxed in bulk. And so with the surplus of a bank, which may consist of credits or money, or real or personal property. In the taxation of banks the same result can be reached in two ways: First, By valuing the stock of the bank at its market value, and deducting from that valuation the assessed value of its real and tangible personal property. Second, By adding to the par value of the stock the value of its surplus, and deducting thereform the assessed value of its real and tangible personal property. The solvent credits of banks are not taxed, nor intended to be, for the reason that by taxing the stock of their institutions all its property of whatever nature is subjected to taxation. It is a matter of general knowledge that banks are in fact, though not in theory, taxed more nearly according to the real value of their assets than any other class of taxpayers.

It is conceded by the appellee that he did not make a return under oath to the assessor of his solvent credits, and the next

question is whether an assessment not made under a sworn return of the taxpayer is *res adjudicata*.

On this point our contention is that the whole scheme of the law was departed from, and is very generally departed from throughout the state in the matter of assessments.

A taxpayer is required by law to make a sworn return, showing the amount of his taxable property. The oath is an important part of the proceeding. It is intended for the protection of the state. If it be true that the mere fact that some assessment is made precludes the state from going against a confessed delinquent, surely the provision of the law requiring the assessment to be under oath should count for something.

The fundamental inquiry is whether the legislature intended that one evading the direct requirement of the statute can invoke an adjudication thus procured against the state. In a number of cases it seems to be held that the oath of the taxpayer is essential. *Lawrence* v. *Jonesville,* 46 Wis., 364; *Matherson* v. *Town,* 20 Wis., 191; *White* v. *Appleton,* 20 Wis., 639; *Gager* v. *Prout,* 48 Ohio St., 89.

The legislature has required the taxpayer to separate money on hand, or on deposit or loaned, from the amount of other indebtedness due to the party which he regards as probably collectible. The appellee did not give in for assessment any "amount of money on hand, or on deposit or loaned" for taxation. All that he gave in was the amount of general indebtedness which he regarded as probably collectible.

If the rule of *res adjudicata* is to apply at all, it would seem that it ought to be mutually applicable and bind both the taxpayer and the state. The law requires, as we have said, a separate return for money on hand or loaned. It is conceded here that a part of the amount additionally assessed was for money loaned, and that none was given in by Mr. Clarke for taxation.

The matter of this assessment was in *fieri,* and it was competent to show that a part of the additional assessment was for money loaned, and to change the assessment from that of sol-

vent credits generally to money loaned, and it was not competent for the appellee to insist that the assessment of other indebtedness which he regarded as probably collectible was intended to cover any species of taxable property which he was required to list separately. *Bank* v. *Adams,* 74 Miss., 179.

*Barnett & Perrin, C. H. Williams, Campbell & George* and *E. Drenning,* for appellee.

So far as the board of supervisors exercised judgment in ascertaining facts or values, its acts are judicial acts, and are not subjects to collateral attack, although decided ever so erroneously. Ascertaining the amount of credits to be assessed, after deducting the amount of indebtedness regarded as probably not collectible, involves judgment and determination on the part of the board. *Atwood* v. *Cowen,* 111 Ill., 481; *Sellars* v. *Barnett,* 185 Ill., 466; *People* v. *Sellars,* 179 Ill., 170; *Vicksburg Bank* v. *Adams, State Revenue Agent,* 74 Miss., 179.

We submit that if it could possibly be held that the assessor, under notice from the revenue agent, could reassess property then, as the tax collector under said sec. 3 is given the same authority that the assessor is given, when he has possession of the assessment rolls, the tax collector could also reassess property; this construction would make the act unconstitutional, because the tax collector would then become an assessor.

Further, such a construction of the section would give not only the assessor, but the tax collector as well, the power to revise, correct and review the former judgments of themselves and each other, and as well the power to review and correct, or even annul, the former judgment of the board of supervisors, who had not only approved the valuations of the assessment rolls, but passed on them in their capacity of equalizers. *State* v. *Tonella,* 70 Miss., 701.

Neither the assessor nor collector of their own volition, nor the revenue agent through the medium of the assessor or tax

collector, are empowered to treat as void or erroneous any as-
sessment of property previously made. They and the revenue
agent are as much concluded by the valuations of property in-
cluded in such assessments as anybody else.

We hold that this question has been finally and conclusively
settled in this state. "Values when fixed by the conjoint action
of the citizen and the constituted authorities, cannot be again
made the subject of controversy between the state and the
citizen, but are definitely and conclusively fixed by the final
action upon the assessment rolls according to law." *State* v.
*Simmons,* 70 Miss., 501. And if the record shows, as we con-
tend that it does, that the indebtedness to Clarke, liable to tax-
ation, has been once valued and passed upon by the constituted
authorities, whether valued erroneously or not, this is conclu-
sive against the appellant's right to recover here. In conclu-
sion of this branch of the case, if we are so far correct, the
power to be exercised by the assessor or tax collector, under the
code and the act of 1894, is not limited to cases where misrep-
resentation may exist, but may be exercised whenever property
has escaped assessment, though the omission to assess it may
have been due to causes other than misrepresentations of value.
The existence of misrepresentation of value is not a prerequisite
to the exercise of the power conferred, so that the power con-
ferred is no greater where the property has escaped assessment
through misrepresentation than where it has escaped from any
other cause. In any case it is to be exercised only when prop-
erty has escaped assessment, and not where it has been assessed
at an undervaluation.

If said sec. 3, of said act, does contemplate a revaluation
of property already valued, then the revenue agent, in his
notice, would have to fix the new valuation and the assessor or
collector, under penalty prescribed by the act, would have to
adopt the revenue agent's valuation; this would make the act
unconstitutional, as the revenue agent would in fact be the as-
sessor, and the assessor would become, instead of a constitu-

tional officer, a figure head. All that saves this act from being unconstitutional is the fact that while the assessor and tax collector are required to assess escaped property, they are left free in their valuation of it. *State* v. *Tonella, supra.*

If such power were given, then no man in the state could say that any property he had was not subject to a lien for taxes, for no man could possibly know whether or not the revenue agent would see fit to raise the assessed value at any time and for a long series of years, and the consequence would be a perfect paralysis of business or dealings of all kinds, and all idea of uniformity or equalization of taxation would be absolutely destroyed.

If we are correct so far, the next question is, has the appellee been assessed on property that has heretofore escaped assessment for the year 1900, or is this an effort to reassess property already assessed for the year 1900, and on which appellee has paid taxes? If it is a reassessment or revaluation of property once assessed, then the judgment of the board of supervisors and that of the circuit court were correct.

The record shows that the appellee was assessed in 1900, at the time the regular assessment was made and approved, with $5,000, as the "amount of indebtedness to the party assessed, which he regards as probably collectible;" in other words, the amount of "indebtedness to him" which was liable to taxation was valued to him at this figure, and the same was approved by the proper authorities.

Upon the so-called additional assessment he is assessed under the same head with an aggregate sum of $20,000; in other words, the assessor comes in and says, in effect, that the valuation of "the indebtedness probably collectible" was of greater value than that shown on the original assessment, and so increases the valuation to the figure named as an additional amount, and this, after the amount has been ascertained by the conjoint action of the citizen and the constituted authorities.

The new assessment purports to set out the different items making the aggregate amount. No attention in making the new assessment was paid to the fact that he had already been assessed with the sum of $5,000 of indebtedness probably collectible, and we have therefore, instead of an additional assessment of what is alleged to be property which has escaped taxation, a reassessment made by the assessor, and on which the appellee is sought to be taxed.

If it could constitutionally be done, there cannot be found in any of our laws any authority for making this reassessment.

Such power is not conferred by § 3768 of the code of 1892, or by sec. 3 of ch. 34 of acts of 1894. It is void, and it should have been rejected for this reason, if for no other.

Our position is, that what the assessor has done in this case does not constitute an additional assessment as authorized by said sec. 3, but a reassessment of property already assessed and valued, for which there is no authority in law.

By § 3751, code 1892, the auditor is required to "furnish the clerk of the board of supervisors of each county with three copies of assessment rolls, properly ruled and headed for the assessment of personal property and polls, in which to enter the following items, viz.: The name of the individual, corporation, company, society, partnership, or firm, to whom any property shall be taxable." One of the items referred to being the "amount of indebtedness to the party assessed, which he regards as probably collectible." The assessor is to have one of the assessment rolls. Sec. 3752, code 1892. By § 3754, code 1892, the assessor is required "to set down in the assessment roll, in separate columns, the names in full of all persons liable to taxation in the county, and each item of personal property liable to taxation." The rolls, as furnished by the auditor, has as one of its column captions, "Amount of indebtedness to the party assessed, which he regards as probably collectible." The statutory printed list furnished the taxpayer has among other items this, and in this way:

"Amount of indebtedness to the party assessed, which he re-
gards as probably collectible................... |$—|—|—."

That the taxpayer is not required in filling the list to give
the several names of his debtors, nor the several amounts due by
them to him, is shown by the use of the words "amount of in-
debtedness," and that no space is provided for such enumera-
tion, and that space only for a sum total is to be found in the
list. Where cattle, horses, etc., are to be given in on said blanks,
a space is made so that the number can be stated. It will be
observed that in all these statutory provisions the "amount of
indebtedness to the party assessed," etc., is treated as a single
item, a single thing to be valued and taxed on the valuation,
and nowhere is it required that a detailed list, showing the
names of debtors, and the amounts respectively due by them,
or the number of notes or number of accounts even, should be
given. The plain meaning of the law is that the citizen is to
assess himself, or be assessed with the value of all indebtedness
due him, as one item of taxation, just as he is to be assessed
with the value of his horse or his plantation.

The law as to the assessment of property which in previous
years "escaped taxation," or was omitted from the assessment
rolls, has no application here. "That law applies only to cases
where the owner omits to list the whole number of articles of
personal property, as, for instance, the whole number of horses
he may own, the specific articles omitted may, when "discov-
ered," be assessed and placed on the assessment and tax books
for any subsequent year. But credits are not assessed by items,
and to discover what items, if any, were omitted in ascertaining
the amount of credits assessed in any previous year, would re-
quire investigation, and that implies the power of the acting
assessor to review the acts of his predecessor (and with us of
the board of supervisors) in such matters, a power which does
not exist by statute or otherwise."

What was done by the assessor in the case at bar was not
the assessing of specific articles of personal property that were

discovered to have been omitted in 1900, but it was simply raising the value of the indebtedness due Clarke beyond what he had valued it at, and which valuation had been passed on and approved by the board of supervisors in their final action on the assessment rolls of 1900. *Atwood* v. *Cowen*, 111 Ill., 481. This case is the one cited by this court in its opinion rendered in the case of *Bank of Oxford* v. *Board of Supervisors*, 78 Miss., 532, s.c., 29 So. Rep., 825. We think that the decision of this court in that case is decisive of this.

The very law itself, in saying that the citizen must be assessed with the amount of indebtedness to him "probably collectible," says that the "indebtedness, the amount of it, the total amount of it, is to be valued as one thing, with one value, to be taxed. In arriving at this value, some specific indebtedness may be valued at its face, another at half its face, and yet another valued at nothing, as being worthless, but, however, the value of the "amount of indebtedness" may be arrived at, and whether right or wrong, the whole of it, all of it, is assessed and valued, and the full amount being valued at whatever figure, the law does not require specification of what specific indebtedness constituted all.

This "item of personal property" was assessed and valued by Clarke in 1900 just as he assessed and valued his land and his stock, and was approved by the board of supervisors as the assessment of the "amount of indebtedness to him probably collectible," and as the fair value, relative or absolute, of that property.

If the mere fact that property is undervalued, knowingly undervalued, is evidence that a part of it has "escaped taxation by reason of not being assessed," then it would not apply simply to this one species of property, but to all, and as a consequence we can safely say that there is not a landowner in this state who could not be assessed in the same way by subsequent assessors, for it is a known fact that no one even pretends to value their lands at what they are really worth, or what they

would take for them, and hence under such a construction of the statute a part of it has escaped taxation by reason of not being assessed.

Argued orally by *Tim E. Cooper,* for appellant.

WHITFIELD, C. J., delivered the opinion of the court.

On two propositions involved the court is unanimous. As to these we hold: (1) A debt due to the vendor of land is a solvent credit, taxable to the vendor as a solvent credit, where the vendee has paid the taxes on the land for the year for which the debt is sought to be taxed; (2) the solvent credits arising from a mercantile business are taxable as such in years subsequent to that in which the debt was contracted, and do not, therefore, continue indefinitely to be covered by the assessment of "amount of money employed in merchandise;" (3) the majority of the court hold further: That, when one has been assessed for "amount of indebtedness which he regards as probably collectible," but has not been assessed for "money on hand, or on deposit, or loaned," he may be additionally assessed therefor. Judge Calhoon dissents as to this, the third proposition, and will present his views in his dissenting opinion. The precise point on this third proposition can only be understood by a statement of the facts bearing on it. The appellee solemnly agrees, in the record, that, though he only gave in $5,000 as the amount of solvent credits which he regarded as probably collectible, "the other items than the one of $200 money loaned to J. C. Martin, appearing on the list representing the indebtedness now, and when the assessment hereinafter mentioned was made, are due to him, which he regarded as probably collectible for the whole amount," which amount, it was conceded, was far in excess of $5,000—to wit, $10,000. In other words, though returning only $5,000, the appellee admits that he actually had a much larger amount than $5,000 of solvent credits, which were of their face value, to wit, $10,000, known by him to be of

that larger amount, and collectible. A more damaging admission could hardly be made, but appellee had no alternative as to admitting it, since it was plainly true that he had intentionally undervalued his solvent credits. By way of salvo to his conscience, he did not make oath to the assessment, and the compliant assessor did not require him to do so, both joining deliberately in this evasion of the law, and yet without having complied with the law—nay, whilst deliberately violating it, and whilst the assessor deliberately violated it—it is gravely argued that this assessment has passed into judgment, by the joint action of the citizen and the tax authorities, and is *res adjudicata,* and cannot be inquired into. The doctrine of *State v. Simmons,* 70 Miss., 490 (12 So., 477), is a most wholesome doctrine on this point, and will be firmly upheld by us in all proper cases; but the assessment which becomes *res adjudicata* is an assessment made in conformity with law, and not in conscious and deliberate defiance of the law, on the part of both the taxpayer and the assessor. Courts do not sit to enable lawbreakers to profit by their own wrong doing. The proposition that the assessment in this case, made in intentional and willful disregard of all the sanctions required by law to make it an assessment, is *res adjudicata,* is abhorrent to justice, and would put a premium on fraud. Authority is not wanting to sustain our view. See *Lawrence* v. *City of Janesville,* 46 Wis., 364 (1 N. W., 338; 50 N. W., 1102); *Gager* v. *Proul,* 48 Ohio St., 89 (26 N. E., 1013); *Morris* v. *Jones,* 150 Ill., 542 (37 N. E., 928). As to this proposition, also, however, our Brother Calhoon dissents.

This brings us to the chief point as to which we differ. The question is precisely this: Where a taxpayer actually has, say $100,000 of solvent credits, which are actually collectible for the full value, and he knows that fact, and so regards them, and intentionally undervalues them, by returning them, say at $5,000, as probably collectible, even supposing him to have sworn to his assessment, have not the $95,000 escaped taxation

by reason of not having been assessed? It is earnestly contended that, in such case, the $95,000 have not escaped taxation by reason of not having been assessed, but that having given in, in a lump sum, under the clause "amount of solvent credits deemed probably collectible," the sum of $5,000, and the board of supervisors not having raised it, the whole $100,000 of solvent credits have been assessed, and that it is a case, true, of fraudulent and willful undervaluation, but that only; and that the state cannot have such outrageous fraud corrected. The fallacy of this reasoning is patent. The board never had the other $95,000 brought to its attention. It never passed on that amount at all. It is said the appellee had all his solvent credits in mind when he returned the amount collectible as $5,000. If that were granted, it does not show that the board had them all in mind, or any amount beyond the $5,000. The board could know nothing of them except as declared. And it is not to be tolerated that a fraudulent taxpayer, who has deliberately and intentionally undervalued his solvent credits, shall succeed in this fraud on the law by the easy process of telling us that he had the whole $100,000 in mind. The board must have the $100,000 in mind as well as he. Counsel for appellant has put this so clearly that we quote this part of his argument to adopt it as a part of the opinion of this court. He says:

"It is conceded by the state that, in the absence of fraud as to property specified on the rolls, the valuation finally fixed by the board is conclusive both upon the state and the taxpayer. The taxpayer is advised by law of the time and place when the question of valuation will be finally settled, and he must then and there attend or take notice of the final action of the board, and if dissatisfied therewith, appeal to the next term of the circuit court of the county. When no appeal is taken, the statute declares the roll to be conclusive. Code, § 3787. The question is conclusive of what? It is not conclusive of the fact that the roll contains all the taxable property of the person named on the roll, although the list required to be made by the taxpayer,

and the roll made by the assessor, contains a blank for non-enumerated personalty, under the head of 'amount of all other personal próperty not otherwise mentioned,' for the code expressly provided for the assessment of any property that escapes assessment. Code, § 3768. Since an assessment is the listing and valuation of property, and since the roll is not conclusive against the .public as to what property the taxpayer owns, it follows that the judgment of the board can only be conclusive of these two facts: First, as against the taxpayer, that he is the owner, or taxable for the property shown on the roll; second, as against the taxpayer and the public, that the valuation of the enumerated property is as finally shown on the roll. The rule of *res adjudicata* in reference to assessment for taxes rests upon the same basis as that of other judgments. Wells Res. Adj., sec. 483. One who relies upon the conclusive effect of a prior decision must be able to show that the precise point was·decided in that proceeding. If there are two issues, on either of which the judgment may have been given, and one would be conclusive, and the other not, there is no *res adjudicata*. *Greene* v. *Bank,* 73 Miss., 542 (19 So., 350). Let us take the item of money. It is dealt with on the printed lists separately, and the assessment is to be of the 'amount of money on hand, or on deposit, or loaned.' Suppose a taxpayer as to money returns the amount of 'money on hand, on deposit, or loaned,' $500. The revenue agent discovers that the party had on hand in actual money $1,000, and assesses him for the additional $500. Is the first assessment *res adjudicata*? Manifestly not; the taxpayer has simply made a false list. He has omitted $500 of the money he did have; it has escaped taxation, and under code, § 3768, the assessor can assess it, and under the act of 1894 the revenue agent can cause it to be assessed as money 'which has escaped taxation.' Either this is true or there is a difference between money and other property, or no other property can be thus assessed. If a man gives in for taxation ten mules when he has twenty, do the omitted ten

escape taxation? If they do, § 3768 of the code is obliterated.
. . . The learned trial judge accepted the view urged by
counsel for appellee, that where any choses in action were as-
sessed against the taxpayer, the state was thereafter precluded
from making another assessment for choses in action which
had, escaped taxation. Their argument was this: The statute,
they say, does not require the taxpayer to furnish an itemized
schedule of solvent credits, but to return only the aggregate
amount (value) thereof. This they say leaves to the taxpayer
the duty of canvassing and considering all his solvent credits,
and of estimating them at their value, and when the roll is ap-
proved by the supervisors the judgment is conclusive on the tax-
payer and on the state; that, first, the taxpayer has considered
and valued all his solvent credits; and, second, that the value
approved by the board is the true assessable value. This is a
fair statement of counsel's position. To this the reply is that
the legislature never intended or provided that the judgment
of the board should be conclusive as to the fact that all property
had been assessed which the taxpayer owned. It did intend
and provide that, as to the value of property brought to the
attention of the board, its judgment should be conclusive.

But appellee's counsel say the legislative scheme does not pro-
vide for bringing a list of the credits before the board, and
therefore it was not contemplated that the board should exercise
its judgment upon specific data. This proposition assumes a
fact, and from that fact counsel proceed to a false conclusion. A
judgment is conclusive because, and only because, the court by
which it is rendered has been advised of the facts, and on those
facts has announced its conclusion. The proposition of counsel is
that the judgment here is conclusive because, and only because,
there was no provision of law by which the facts could be sub-
mitted to the court. They concede that, if the statute required
a list of the credits to be made, then that unlisted items could
be assessed; but they contend that, no list being filed, it is to be
conclusively presumed that things not brought to the attention

of the board were by it adjudicated, or are to be treated as ad-
judicated. It is too clear for controversy that under the statute
property which has escaped taxation can afterward be assessed.
In reference to solvent credits the most that can be said is, that
whether a particular credit has been omitted altogether or only
undervalued cannot be discovered by an examination of the
roll, and is known only to the taxpayer. The foundation of the
claim that such property cannot be assessed in a subsequent
year is that it has already been assessed, and the claim that it
has been assessed rests, in its turn, upon the proposition that it
cannot be told whether it has been or not. Take the two propo-
sitions as to which there cannot be ground for contention: (1)
Property which has been assessed and valued cannot be reas-
sessed; (2) property which has not been assessed can be sub-
sequently put on the rolls and taxed. To which class shall be
assigned $5,000 of solvent credits owned by the appellee in
1900, it being proven that he then had $10,000 of notes secured
by mortgage, which he then knew to be worth their face value,
and it further appearing that he paid taxes only on $5,000.
Two things are certain: First, in no event can the appellee be
required to pay on a greater amount than he justly ought;
second, unless the additional assessment is upheld, he un-
questionably escaped the payment of taxes on one-half of his
solvent credits. It must be borne in mind that our constitution
is mandatory, and our statute presumably intends that he shall
pay on the whole $10,000, and that whether the $5,000 which
has not been taxed escapes or is subject to taxation depends
upon the question whether the words of the statute shall be so
construed as to subject it to, or exclude it from, taxation. Did
the legislature intend that accumulated wealth in the shape of
bonds, notes, and stocks should stand upon the same footing
with tangible, visible property, or that it should occupy a more
favored position? It is conceded by the state that, when prop-
erty has been listed and valued, the valuation is conclusive,
both upon the taxpayer and the state. *State* v. *Tonella,* 70

Miss., 701 (14 So., 17; 22 L. R. A., 346); *State* v. *Simmons,* 70 Miss., 485 (12 So., 477). The appellee admits that under the statute all other property which has escaped taxation may be now assessed, but contends that, whenever any assessment of money or any credit has been made, there cannot be another assessment. The foundation of this contention, as it has been said, rests upon the proposition that, since the statute requires the taxpayer to return all his money or credits, when he returns any, the presumption is conclusive that he has returned all. But the statute requires that the owners of other property return it all for taxation, and if they do not, there is no such presumption in their favor. It is not a reply to say that other property is required to be specifically listed, while money or credits are not. The statute (code, § 3761), in prescribing the form of the lists, requires that each taxpayer, having scheduled his property therein enumerated, shall finally state generally the "amount of all other personal property not otherwise enumerated." This other property is not to be individualized; it is grouped. The contention of the appellee would therefore lead to the conclusion that if a taxpayer should return generally, in response to the interrogatory, any amount, say $100, he would forever shield from taxation any imaginable species of personal property."

This reasoning is *sans replique.* It is perfectly obvious that this construction carries out the intent and purpose of the constitution and laws, and that its effect is to make the dishonest taxpayer pay only what he justly owes. The law is not made in the interest of those who fraudulently attempt to evade their just share of the burdens of taxation. The case of the *Bank of Oxford,* 78 Miss., 532 (29 So., 402), is wholly inapplicable here. Banks do not pay on solvent credits. All that was held in that case was that, as the surplus of the bank had been assessed, it could not be reassessed. That surplus was an aggregated subject of taxation, a unit in itself, wholly unlike solvent credits. It was taxed just as a stock of merchandise would be,

or jewelry, or gold ware, or the like, all which are wholly un-like solvent credits.

We are warned in argument that our view will be, as it is said, "far-reaching and disastrous." We are not to be "frighted from our propriety" by visions of "gorgons, hydras, and chimeras dire," conjured up by the fraudulent and dis-honest taxpayer, when the Ithuriel spear of the law shall make the toad squat and the fiend resume his native form. We are not concerned with consequences. That is no argument to address to a court—if that be all that there is to be said. We are concerned only to ascertain clearly what the right is, and, having ascertained it, to maintain it inflexibly. Every dishonest return of taxes is not only a violation of the law, and beside a wrong to the state, but it is the grossest injustice to those who honestly pay their taxes. If all citizens would take care to pay as they should, the tax rate would be lowered, prob-ably one-half, and property in the hands of corporations and individuals would equally respond to its just burdens. We have held the law aloft as to corporate efforts at evasion, and we shall mete out the same equal justice to the fraudulent indi-vidual taxpayer.

*Reversed and remanded.*

CALHOON, J., dissenting in part, delivered the following opinion.

It is too narrow a construction to hold that the validity of the assessment to charge the citizen with liability for taxes on personalty depends on conformity to the printed list, or on its being sworn to as required. The formula prescribed by the statute is one thing; what is or is not a substantial conformity to it is quite another. The printed list contains divers items, as, to instance, "Cattle valued at ——," "Horses valued at ——," and so forth; and it was designed to have it show the number and value of the various articles, and then, "Amount of money on hand, on deposit, or loaned ——," "Amount of

indebtedness to the party assessed which he regards as probably collectible ——," this being clearly regarded by the lawmakers as its value. The object of this itemization is to reach the various forms of value for which the party is assessable, and should be observed in assessment. But if the party assessed lists cattle, horses, mules, etc., valuing them without giving the number, value being aimed at and the number being a mere means to that end, if the end is attained, the taxpayer cannot object that he is not liable for the taxes on such value, and, he being bound, must be protected by the assessment as fully as if the forms of the statute had been observed. "Amount of money on hand," although joined with "Money on deposit or loaned" in the formula, is in its nature distinct and taxable specifically. Amount of money on deposit or loaned is clearly comprehended by "amount of indebtedness to the party assessed which he regards as probably collectible," and if, in fact, money deposited or loaned was given in or listed as "indebtedness to the party," etc., no wrong would result to the revenue; for, while the form given was not observed, the amount taxable of the party assessed would be reached. These printed lists, on which the tax list is to be made out, are delivered, alphabetically arranged, to the board of supervisors, who are supposed to examine and approve them, and any person thought not to have "given in a correct statement of his credits, or choses in action, or other property," may be properly assessed by the board. Observe that code, § 3767, characterizes as "credits or choses in action" all dues to the party. Thus the party giving in the list is liable to be proceeded against for omission or undervaluation, and he is bound by the assessment. *Id.,* §§ 3787, 3788, 3791, 3792. The assessment is committed to the assessor and board of supervisors. They represent the state and county. They have large power in dealing with the subject, and when the assessment is completed, the matter is ended, except as to property omitted—that is, some specific thing not embraced. "Amount" means aggregation, a sum total made up

of particulars, and where the "amount of money on deposit, or loaned, or other indebtedness to the party assessed," is listed, "credits or choses in action" are embraced, and cannot be said to have "escaped taxation by reason of not being assessed." It was assessed. It may have been undervalued, but it was assessed, however much undervalued. When the assessment is concluded by being dealt with by the assessor and the board of supervisors, it is ended, except as to distinct things not included in the assessment. As "amount" is made up of particulars valued in the aggregate, each particular being a factor in the aggregation, escape from taxation or assessment cannot be predicated of any of the factors. Appellee was assessed on "amount of indebtedness to the party assessed which he regards as probably collectible, $5,000." The evidence shows that, included in the indebtedness to him, was a note for $150 for land sold, a note for money loaned $150, and a mercantile account for $1,600, which was a balance due him on a former year's business as a merchant, and that he, without designating any particular sort of indebtedness, but having reference to all indebtedness due him, gave in the amount shown by the list. The view is not maintainable that the mercantile debt, accrued in a former year's business, was included in the capital stock invested in merchandise, but the view is maintainable that this debt and the debt for money loaned, being factors in making up the "amount of indebtedness to the party assessed," etc., cannot be said to have "escaped taxation by reason of not being assessed." They were assessed, not specifically, but as elements of the amount given as the aggregate. They were undervalued just as lands, horses, mules, jewelry, etc., often are. But they were assessed, not as they should have been, it is true, but by those charged by law with the duty of assessing, and, as the law now is, that concluded the matter. Credits or choses in action, including the land note and money loaned, are to be assessed, not specifically, but by amount. A party is not required to list them, but to give the amount of their aggregate value—that is,

the sum or amount of what is regarded as probably collectible, This amount is the value to be assessed and taxed. The oath, re-enforced by the fear of the penalty of perjury, is intended to probe the conscience to ascertain the amount which is taken as the value of solvent credits. If the oath be omitted, or a false one made, still, if the "amount" has been made up from consideration of all the dues to the party, an assessment has been made. In no other view can the citizen be protected from injustice. There is a wide difference between not being assessed and being improperly assessed, between undervaluation and no valuation, between assessment and reassessment. The legislature has not provided for reassessment at the instance of its revenue agent, but only for assessment of persons and property which "escaped taxation by reason of not being assessed." Acts 1894, p. 29, ch. 34, sec. 3, which repealed certain sections of the code (ch. 126), limits this officer to persons and property that have "escaped taxation by reason of not being assessed," which does not include such as have been assessed by the proper authorities, even though not properly assessed. The printed list embraces: "Jewelry valued at ———," "Gold or silver plate valued at ———," "Amount of capital employed in merchandise or manufacturing ———," "Household furniture (over $250 in value) ———." There is manifestly no contemplation that sundry articles of jewelry, such as rings, earrings, brooches, bracelets, etc., or divers pieces of gold or silver plate, or multitudinous articles of household furniture, shall be listed. It is well known that such enumeration is never, and never has been, made. It will hardly be contended that one who had given in "Jewelry valued at ———," "Gold or silver plate valued at ———," "Household furniture (over $250) valued at ———," or "Amount of capital employed in merchandise or manufacturing ———", filling out the blanks with definite sums, is liable, years afterward, to be reassessed as to these things. The supposed distinction between "credits or choses in action," and other values, is more fanciful than real. Amount of in-

debtedness is not different from amount of any other thing. Different forms of expression are used, but the object is to tax value in the various sorts of property. One may have $10,000 of credits not worth $1,000. Money is the standard of value, and is taxed as such, but money loaned, or on deposit, is simply a chose in action, and may be of less value than the sum loaned or deposited. There is no question here of what the legislature might authorize. The question is what it has authorized. It has authorized, not a reassessment, not a *nunc pro tunc* assessment, but "an additional assessment," to embrace property which "escaped taxation by reason of not being assessed." Only property not assessed may be proceeded against. If it was assessed, however improperly, it does not come within the law. Our policy commits to local authorities the matter of taxation. Lists of taxables are provided for, details are regulated, and revisory power is lodged with the boards of supervisors, both as to the subjects of taxation and their valuation. Assessors are to report undervaluation, and the boards are to correct. This correction is final, and this is admitted, as to certain kinds of property, but denied as to "credits" of various sorts. There is no just distinction. The printed lists are subdivided so as to call attention to the various subjects. But "money on deposit, or loaned, and amount of indebtedness," etc., embrace all forms of indebtedness other than corporate or *quasi* corporate indebtedness. All individual indebtedness must consist of deposits, or loans otherwise than as deposits, or claims of dues. Code, § 3767, uses the phrase "credits or choses in action," which shows the legislative understanding that these terms cover the various subdivisions of rights in action of whatever sort, and this section provides for a proper assessment of these things at the proper time. before approval of the roll. How may we distinguish between the effect of assessment of any sort of property and the "amount" of credits of any sort? If there be greater liability to evasion or fraud whereby values may escape taxation, that

is for the legislature to guard against. Doubtless millions have escaped, so far as values go, in lands, mules, horses, jewelry, etc., by deliberate undervaluation, but that cannot be what is meant in the statute of 1894 (Laws 1894, ch. 34, sec. 3) by the words "escaped taxation by reason of not being assessed." It was surely not intended that assessments should be overhauled and proper valuation made. That would perhaps involve nearly every assessment made. Amount of value is what is meant. Of course the amount of money on hand and its value are the same. But it is not so of money loaned, whose value fluctuates, and yet it, as other indebtedness, is assessed according to value. The amount of the value of the entire indebtedness, of whatever it may consist, is listed and taxed, and there is nothing but ingenuity in the attempted distinction between different kinds of taxables. If part of the just valuation of a farm cannot be said to have "escaped taxation by reason of not being assessed," it is impossible to see how part of the sum making the "amount" of indebtedness can be said to have not been assessed. One can no more be said to have escaped taxation than the other. The fact that there was not exact conformity to the different items of the list, since several amount to the same thing—that is, indebtedness, and the fact that oath was not administered, can make no difference. Oath might be required at any time. No objection was made. Power must be lodged somewhere. It has been lodged with the assessors and board of supervisors. The citizen is absolutely bound by their action, and must, necessarily, be protected by it, at least until the legislature provides for a general overhauling, if it can and will do so, whereby all the sinners are to be brought to judgment. It will not do to stretch the law to meet supposed or real cases of the escape of large sums of proper valuation for taxation. There must be a finality. There must be one rule for the individual and for the state and counties in reference to assessments, so far as the end of controversy about values is concerned. If not, there is

no safety for any citizen, however honest. Property being given in, whether under or over valued, must be conclusive. The state cannot concern herself, except where property is not given in. She must be controlled, as the citizen must be, by the final action of her own tribunals. Is there any other tribunal on earth whose decision does not bind both sides ? Is there any tribunal where it is allowed to set up fraud after final judgment unless it was discovered after the investigation, and was not discovered sooner, or might not have been with reasonable diligence ? I cannot conceive a case between the state and a citizen where the citizen only, and not the state, will be bound by the adjudication.