DARNELL *v.* JOHNSON STATE REVENUE AGENT.

[68 South. 780.]

1. CONSTITUTIONAL LAW. *Statute. Construction. Wisdom of Statute. Legislative intent. Validity. Taxation. Assessment. Statutory provisions. Repeal. Implied repeal. Approval by board of supervisors. Judicial review.*
   Courts have nothing to do with the policy or impolicy of legislation. It is their duty to interpret legislation and when they have discovered the will of the law-making department, it is their duty to apply and make effectual the statute, unless it violates some principle of constitutional law.

2. CONSTITUTIONAL LAW. *Statutes. Validity.*
   A fundamental rule for construing statutes is to square the statute with the Constitution, if it may be done without doing violence to the language employed and the intentions of the legislature as expressed in the law under consideration.

3. TAXATION. *Assessments. Statutory provisions.*
   Chapter 89, Laws, 1912, providing that the assessment roll shall show the number of acres and valuation of cultivated lands, the number of acres and valuation of wild and uncultivated land, excluding timber, the estimated valuation of timber, etc., merely supplements, and does not impliedly repeal section 4281, Code 1906, providing that land shall be assessed according to its intrinsic value, taking the improvements into consideration.

4. Statutes. *Repeal. Implied repeal.*
   Repeals by implication are not favored by the courts. If the former act is not in necessary conflict with the subsequent act, both will be endorsed.

5. Assessment Roll. *Approval by board of supervisors. Judicial review.*
   Where the board of supervisors has the question of value for taxation properly before it for decision, and decides upon the value of the property assessed, this judgment may not be questioned, except by a direct appeal to the circuit court.

6. Same.
   Where a board of supervisors assessed land by an arbitrary valuation, without taking into consideration the value of the timber growing thereon, though chapter 89, Laws 1912, required both a valuation of the land excluding the timber and a separate valuation of the timber, the court, in an action seeking to have the board reassess the land, could compel a reassessment in accordance with the equality and uniformity clause of the Constitution 1890, section 112.

Appeal from the circuit court of Quitman county.
Hon. W. A. Alcorn, Judge.

Action by J. C. Johnson, State Revenue Agent, against R. J. Darnell.

From a judgment for plaintiff, defendant appeals.

Chapter 89, Laws of 1912, provides the following form of assessment roll, and directs the state auditor to furnish same to each county assessor:

"What Caption of Roll shall Show.—Number of assessment; name of owner; division of section; section; township; range; east or west; number of acres and valuation of cultivated lands; number of acres and valuation of wild and uncultivated land, excluding timber; estimated number of feet of timber thereon and valuation of the timber; total number of acres of country lands; valuation of land in cities, towns and villages, excluding improvements and buildings thereon; valuation of improvements and buildings on property in cities, towns and villages; grand total valuation; num-

ber of acres and valuation of lands belonging to the state; acreage and valuation of lands subject to levee taxes; valuation of land subject to separate school taxes; number of acres of vacant land not taxable; number of acres of school lands not taxable; number of tax receipts for 191—; number of tax receipt for 191—.''

The state revenue agent, finding that certain timber belonging to appellant situated on section 3, township 26, range 1 east, Quitman county, had not been returned for assessment, and that a gross underestimate of the timber on section 11 had been returned to the assessor, proceeded to direct the tax collector of said county to assess the timber on both of said sections which had escaped taxation.

The defense set up by the appellant was: First, that the Law of 1912 (chapter 89, Laws 1912) was unconstitutional, in that it discriminated against timber lands; and, second, that the assessment, having been approved by the board of supervisors, was *res adjudicata,* and could not be reopened.

Section 4281, Code of 1906, referred to in the opinion of the court, is as follows:

''Land shall be assessed according to its intrinsic value, to be judged of by the owner or person having possession or charge thereof, taking into consideration the improvements, the proximity to navigation, to a railroad, to a city, town, village or road, and any other circumstance that tends to enhance its value, and not at what it might bring at a forced sale, but what the owner would be willing to accept and expect to get for it if he were disposed to sell it; and if any person shall deliver or disclose to an assessor or deputy assessor, a list, statement, or return in regard to his land which, in the opinion of the assessor or deputy assessor, is false or fraudulent, or contains any under-statement or undervaluation, the assessor or deputy assessor shall make an assessment of the land at a valuation equal

to the highest rate per acre for any lands adjoining that so undervalued. Lands not given in by any person shall be valued in the same manner by the assessor; and should there be a difference in the value of different parcels of a tract, the several parcels shall be separately assessed.''

Section 112 of the Constitution of 1890 'is as follows:

''Taxation shall be uniform and equal throughout the state. Property shall be taxed in proportion to its value. The legislature may, however, impose a tax *per capita* upon such domestic animals as from their nature and habits are destructive of other property. Property shall be assessed for taxes under general laws, and by uniform rules, according to its true value. But the legislature may provide for a special mode of valuation and assessment for railroads, and railroad and other corporate property, or for particular species of property belonging to persons, corporations, or associations not situated wholly in one county. But all such property shall be assessed at its true value, and no county shall be denied the right to levy county and special taxes upon such assessment as in other cases of property situated and assessed in the county.''

All other facts are stated in the opinion of the court.

*Tim E. Cooper* and *St. John Waddell,* for appellant.

*James R. McDowell* and *Cutrer & Johnston,* for appellee.

Cook, J., delivered the opinion of the court.

The revenue agent, proceeding under sections 4738 and 4740 of the Code of 1906, sought to have the board of supervisors to reassess certain lands in Quitman county, described as the south half and the east half of the northeast quarter of section 3, and all of section 11, in township 26, range 1 east, belonging to R. J. Darnell, the appellant. The board of supervisors refused to reassess the land in question, and the revenue

agent appealed to the circuit court, which court decided that all the land had escaped taxation and should have been assessed by the board of supervisors. From this judgment the owner of the land appeals to this court.

It is contended by appellant that chapter 89, Laws of 1912, violates section 112 of the Constitution, and, further, that the lands in question have been properly and legally assessed for taxation, and the assessment approved by the board of supervisors, and, no appeal having been taken from the order of the board, the entire matter is *res adjudicata.* This court, of course, has nothing to do with or concern in the policy or impolicy of legislation. It is our function to interpret legislation, and when we have discovered the will of the law-making department it is our duty to apply and make effectual the statute, unless it violates some principle of constitutional law. A fundamental rule of construction admonishes the courts to square statutes with the Constitution, if it may be done without doing violence to the language employed and the intentions of the legislature as expressed in the law under consideration.

The indispensable postulate in the argument of counsel for appellant, whereby they undertake to demonstrate the unconstitutionality of chapter 89, Laws of 1912, lies in the assumption that, by necessary implication, the provisions of chapter 89 repeal section 4281, Code of 1906. In order to substantiate their contention that chapter 89, Laws of 1912, in legal effect, commands the board of supervisors to omit from their valuation of rural or cultivated lands all improvements, it is important to get rid of section 4281, and so they say that this section is necessarily repealed by chapter 89, Laws of 1912. So, with this premise, it is argued that part of section 112 which reads, ''Property shall be assessed for taxes under general laws, and by uniform rules, according to its value,'' is violated

by chapter 89, Laws of 1912. This conclusion is reached by pointing out that, while the last-named act requires that in assessing urban lands the value of the improvements thereon shall be separately assessed, the act does not require that improvements on rural lands shall be separately assessed, and failing in this the court will impute to the legislature an intention to discriminate between rural and urban lands.

In our opinion, unless it can be said that chapter 89, Laws of 1912, repeals section 4281 of the Code, the entire superstructure of appellant's argument upon the alleged infringement of the Constitution is swept away. If section 4281 can be read in connection with the act under review all real or imaginary lack of uniformity and equality disappears. In the first place, as has been done many times before, the legislature has added new headings to assessment rolls, and, so far as we have been advised, this procedure has never been questioned. The evident thought is and has always been to list all property for taxation, and to adopt a form of listing calculated to aid the board of supervisors in assessing all property "according to its true value." The act in question merely supplements other laws along this line, and the necessity for continued changes in the form of assessment rolls is brought about by experience.

Uncultivated land may be of little or no value, either because of the sparsity of the timber growth thereon, or because the timber thereon is of that sort which has no merchantable value at all. On the other hand, the land without the timber may be, and frequently is, practically worthless, because the soil is so poor that it does not pay to cultivate it. The legislature knew all this, and knew, further, that large bodies of uncultivated lands, heavily timbered with pine, oak, and other valuable woods, were listed as uncultivated lands at a valuation of the soil itself denuded of the timber—

the timber being worth many times the value of the land itself. So it was this form of assessment was adopted, in order that, in arriving at the true value of uncultivated lands, the board of supervisors should have before them a valuation of the timber standing on the land—which element may, or not, be the chief element of value.

Owners of large tracts of valuable timber lands may have cause of complaint against the law; but owners of uncultivated lands in small tracts, where the timber forms an insignificant portion of the value of the land, or is so isolated that it will not pay to market it, will be benefited by the separate assessment. It is not unreasonable to say that there is no necessity for separately valuing improvements on cultivated or farming lands. The improvements on farms are so nearly uniform in character and value that the legislature did not deem it necessary to have the improvements separately valued. It does not follow, however, that improvements shall not be taken into consideration; but, on the contrary, section 4281, Code 1906, expressly enjoins that improvements shall be taken into consideration. We decline to follow the suggestion that section 4281 is repealed.

We can see no inharmony or conflict in chapter 89, Laws of 1912, and section 4281 of the Code. Both statutes were designed to accomplish the same purpose—to assess all land "according to its intrinsic value," after taking into consideration all of those elements which go to make up the value of the land. Chapter 89, Laws of 1912, does not require improvements on cultivated lands to be separately valued, but section 4281 does require the assessment to be made "taking into consideration the improvements."

By all rules of construction known to us, repeals by implication are not favored by the courts. If the former act is not in necessary conflict with the subse-

quent act, both will be enforced. The act here dis-
cussed does not in terms refer to section 4281, and
it would be straining a point to say that the legisla-
ture intended to or by necessary implication here re-
pealed that section of the Code which was designed to
admonish the taxing officers to make their assessments
according to the mandates of the Constitution. It is
our view that section 4281 furnishes the "general law,"
and is the "uniform rule" by which all property must
be assessed for taxes, while chapter 89, Laws of 1912,
providing a form for assessment rolls, was adopted for
the purpose of aiding the taxing officers in carrying out
the constitutional scheme of taxation. This being a
correct interpretation of the legislative purpose, it is
wholly immaterial whether chapter 89, Laws of 1912,
shall be construed as directory or mandatory. The
section of the Code and chapter 89, Laws of 1912, dove-
tail, and together furnish a uniform rule for the as-
sessment of all property subject to taxation.

The next question for us to answer is: Was the
order of the board of supervisors, approving the as-
sessment roll, a judicial determination of the true value
of the land listed? If the land was listed, and the
same was valued by the assessor and the board of
supervisors, the judgment of the board is conclusive—
is res adjudicata—unless some one entitled so to do
appeals from the judgment of the board. In other
words, where the board has the question of value prop-
erly before it for decision, and decides upon the value
of the property assessed, this judgment may not be
questioned, except by a direct appeal to the circuit court.

To ascertain what has been adjudicated, we must
look to the assessment roll, because the board approved
this roll, and nothing more. The land in question, as
assessed, appears to have been that class of land which
is denominated on the roll, prepared according to chap-
ter 89, Laws of 1912, "wild and uncultivated land."

109 Miss.—37

The roll was so prepared as to require this class of land to be assessed, "excluding timber," and a separate "estimated number of feet of timber thereon and valuation of the timber," and then there followed a subdivision of the roll headed, "Grand Total Valuation."

As above noted, the assessment of two separate tracts of land are involved in this controversy. The lands in section 11 were assessed strictly in accordance with the plan devised by chapter 89, Laws of 1912, and the land excluding the timber was valued, and the amount of the timber thereon was estimated and valued, and the grand total valuation was set down in the proper place, which consisted of the combined value of the land excluding the timber and the separate valuation of the timber. The lands in section 3 were assessed in the column "Valuation of Wild and Uncultivated Land, Excluding Timber," but the "estimated number of feet of timber thereon and valuation of the timber" was not filled out. Looking to the "Grand Total Valuation," we find that column fixes the valuation of the lands the same as had been fixed excluding the timber.

Without going into any discussion, and without giving any reasons for our conclusion, we hold that the board had before it, in valuing the lands in section 11, all of the elements of value, and affirmatively decided that the total valuation thereof was as fixed in the grand total column, and that this valuation is conclusive, and cannot be questioned by the revenue agent. We are equally as well satisfied that the record shows the lands in section 3 were not assessed according to the scheme provided by the Constitution.

Putting it in another way, the whole record shows that the board of supervisors, in the one case, followed the rule which requires all property listed for taxation to be assessed at its true value, while, in the other case, the board assessed the naked land by an arbitrary valuation, without taking into consideration

the value of the timber growing thereon. In the latter assessment, the board, by its judgment, says the land is timbered land, but in fixing its value we decline to take into consideration the value of that timber, but assess the soil itself as though it was denuded of timber. 'So it seems clear that this land escaped taxation in the legal sense—the judgment and record showing affirmatively that the land was not assessed at its true value, but was arbitrarily and advisedly valued, by excluding an element of value, which the proof shows was the principal element thereof, and amounted to two million, eight hundred and eighty six thousand feet, valued at eight thousand six hundred and fifty-eight dollars.

The valuation set down in the total valuation column is not significant, nor does it show that the board thereby valued the land at its true value; but, on the contrary, this entry accentuates the purpose and intention of the board to ignore the uniform rule, and to adopt an arbitrary and unconstitutional rule of valuation. For the purpose of illustration alone, it may be admitted that the question here involved might be foreclosed by the principles of *res judicata,* had the assessment ignored all of the headings of the roll, except the description of the land and the valuation thereof in the grand total column. But this was not done, and it therefore appears that the board did not approve the valuation of the land as an entirety, but expressly declined to value the land as timbered land, and did value it as untimbered land, in spite of the fact that the roll affirmatively shows that the land was timbered.

The conclusion is inevitable that the board deliberately violated both the equality and uniformity clause of the Constitution, and the land in section 3 has escaped taxation, and the circuit judge was right in so holding. It follows, from the views expressed, that the judgment of the circuit court as to the lands in section

11 is disapproved, and the judgment as to the lands in section 3 is affirmed.

*Disapproved in part.*

*Affirmed in part.*

SMITH, C. J., (dissenting in part).

I am unable to concur in the conclusion reached by my Associates with reference to the assessment of lands in section 3. The statute here drawn in question is chapter 89 of the Laws of 1912, which provides that the lands rolls furnished the county assessor by the auditor shall be—

"ruled and headed for the assessment of lands so as to show the following, to wit: Number of assessment; name of owner; division of section; section; township; range; east or west; number of acres and valuation of cultivated lands; number of acres and valuation of wild and uncultivated land, excluding timber; estimated number of feet of timber thereon, and valuation of the timber; total number of acres of country lands; valuation of land in cities, towns and villages, excluding improvements and buildings thereon; valuation of improvements and buildings on property in cities, towns and villages; grand total valuation."

The case made by the record is this: Appellee is the owner of certain lands in Quitman county in sections 3 and 11, township 26, range 1 east. In 1913 the blanks in the assessment roll with reference to section 11, under the headings "Number of Acres of Wild and Uncultivated Lands," "Valuation of Wild and Uncultivated Lands Excluding Timber," "Estimated Number of Feet of Timber Thereon," and "Valuation of the Timber Thereon," were all filled out, and the two values —that is, of the land excluding timber and of the timber thereon—were carried forward under the heading "Grand Total Valuation." With reference to sec-

tion 3, the blanks were not filled in under the headings "Estimated Number of Feet of Timber Thereon," and the "Valuation of the Timber Thereon;" the land being assessed simply under the heading "Number of Acres of Wild and Uncultivated Land" and "Valuation of Wild and Uncultivated Lands Excluding Timber," the valuation under this last heading being carried forward under the heading "Grand Total Valuation."

On November 30, 1914, the revenue agent notified the tax collector that "standing timber belonging to and owned by persons as per sheets hereto attached, has escaped taxation during the year 1913 by reason of not being assessed," and directed him to "make the proper assessment of said property by way of and additional assessment," etc. The tax collector complied with this direction and reported the additional assessment made to the board of supervisors. On objection being interposed by appellant, this assessment was disapproved by the board, whereupon the revenue agent appealed to the court below, and obtained a reversal of the order of the board of supervisors and an approval of the additional assessment as made by the tax collector. The grounds upon which we are asked to reverse the judgment of the court below approving this assessment are:

"(1) That the act of 1912 is a directory and not a mandatory statute, and that, being directory, a disregard of its provisions by the assessor and the board of supervisors did not put an end to the power of these officers to proceed in the matter of assessment of the lands, and that the approval of the roll by the board of supervisors was *res adjudicata* and conclusive.

"(2) That whether the act be considered as directory or mandatory, it is void because obnoxious to section 112 of the Constitution of Mississippi, and to section 1 of the fourteenth amendment to the Constitution of the United States."

It will be observed that the purpose of the enactment of chapter 89, Laws of 1912, in so far as the matter here in controversy is concerned, is, as disclosed by its. title, simply "to provide a better form of land assessment roll." No purpose is disclosed either in the title or in the body of the statute to tax timber growing on land as such. In the light of our current history it seems clear that the purpose of the legislature in requiring the assessment rolls to show the separate valuation of the land and of the timber growing thereon was to insure that one of the most valuable factors which make up the value of some land, to wit, the timber growing thereon, would be taken into consideration by the assessor and the board of supervisors, so that the state might receive taxes on the full value of the land. The provision for listing these separate values is in no sense for the protection of the individual, but solely for the protection of the state and as a guide to its officials in making the assessment. If I am correct in this, then it follows from the authorities that this provision of the statute is directory, and not mandatory, and that a failure to observe it does not avoid the assessment. In *State* v. *Phillips,* 137 Mo. 259, 38 S. W. 931, it was said that:

"There are undoubtedly many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them, which do not limit their power, or render its exercise in disregard of the requisitions ineffectual. Such generally are regulations designed to secure order, system and dispatch in proceedings, and by a disregard of which the rights of parties interested cannot be injuriously affected. Provisions of this character are not usually regarded as mandatory, unless accompanied by negative words, importing that the act required shall not be done in any other manner or time than that designated."

But when the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be, and generally would be injuriously affected, they are not directory but mandatory. They must be followed or the acts done will be invalid. The power of the officer in all such cases is limited by the measure and conditions prescribed for its exercise. This case is cited with approval by Mr. Cooley in his work on Taxation (third edition, vol. 1, page 480), where he states that:

"The same rule in nearly the same terms has been laid down in other cases, and it seems a sound and just rule, and may reasonably be believed to be in accord with the legislative will in the cases to which it is applicable. All legislation must be supposed to take into account the possible, if not probable, mistakes and irregularities of officers in executing the provisions of the law, and it is hardly reasonable to infer an intent on the part of a legislative body, that a failure of administrative officers to comply with any provision made for the benefit of the state exclusively, or merely as a guide in orderly proceedings, should deprive the state of all benefit to be derived from a compliance with other provisions that embody the main purpose and object of the law. Nor, on the other hand, is it to be supposed the legislature intended its own securities for the protection of individual rights and property should be disregarded with impunity."

One of the variations of the rule here under consideration was laid down by Mr. Cooley in this book (volume 1, page 476) as follows:

"The form the question most commonly assumes is this: Some official act which the law provides for, and which constitutes one step to be followed by others in reaching a specified result, having failed to be taken, does the authority to proceed toward the intended result terminate when that particular step has been neglected,

or may the proceeding go on to a conclusion, treating the neglect as immaterial? If the proceeding fails at that point, the requirement of the official act which has been neglected is said to be mandatory, but if it may still proceed the requirement is directory only; that is to say, the law directs that particular act to be performed, but does not imperatively command it as a condition precedent to anything further."

I understand my Associates to hold that chapter 89 of the Laws of 1912 in this connection is mandatory, that the assessment of the land in section 3 is void because of the failure of the tax assessor to follow its requirements, and therefore the land has escaped taxation. If this is true the state was not entitled to the taxes collected thereon under the assessment, and in the event appellee had failed to pay the same the land could not have been sold therefor. Moreover, if the assessment of the land in section 3, made in 1913, is void, then of course the matter stands as if no assessment whatever had been made, and therefore any assessment made afterwards, by whatever name called, must be such as would have been valid in the first instance. Consequently it follows that the additional assessment here in question of the land in section 3, and which my Associates have approved, is void for the reason that there is no pretense that this additional assessment is of the entire value of the land, but is admittedly based on the value of only one element or factor thereof; that is, the standing timber growing thereon. If the original assessment of this land is void because of the failure to include in the valuation thereof the value of the standing timber growing thereon, it necessarily follows that the present assessment, which takes into consideration only the value of the timber, and leaves out of view the value of the land itself, is also void.

I am also very much inclined to the opinion that, conceding the provision of the statute here in question

to be mandatory, the assessment actually made is *res judicata.* My Associates. correctly hold that the assessment of the land in section 11 is *res judicata,* and while they expressly decline to set forth their reason for so doing, I am sure that it is because of the fact that an estimate, though inaccurate, of the value of the timber, was given, and therefore that element of value was passed on by both the assessor and the board of supervisors. Suppose, instead of figures having been written under the heading "Valuation of Timber Thereon," there had been written the word "Nothing." It would necessarily have followed that the assessment would have been *res judicata,* for the board and the assessor by reason thereof would necessarily have adjudged the timber to have been of no value. It seems to me that the same result would follow when the column of the roll containing this heading is left blank, for in my judgment the failure to state any value at all should be held to be equivalent to the statement that the value was "nothing." If it is true, as my Associates say, "that the roll affirmatively shows that the land was timbered," it seems to me that it necessarily follows that it was assessed as timbered lands, and therefore that the assessor and the board took that element of value into consideration in making the assessment.

I am of the opinion that the provision of the statute here under consideration is directory merely, and that, while the assessor and the board of supervisors may have failed to take into consideration one of the elements which go to make up the value of the land, to wit, the timber growing thereon, in estimating its value, that nevertheless the approval of the roll is conclusive of the question here involved, and therefore the constitutionality of the statute does not arise. Consequently I deem it improper for me to express an opinion thereon.