GULLY, TAX COLLECTOR, *v.* J. J. NEWMAN LUMBER CO.

(Division A.   Jan. 6, 1936.)

[164 So. 891.   No. 31902.]

(Division A.   May 25, 1936.)

[168 So. 258.   No. 31902.]

**T. Price Dale**, of Hattiesburg, and **Davis & Davis**, of Purvis, for appellant.

**T. Price Dale,** of Hattiesburg, and **Davis & Davis,** of Purvis, for appellant on suggestion of error.

Lamar Henington and **Heidelberg & Roberts,** all of Hattiesburg, for appellee.

**Lamar Henington** and **Heidelberg & Roberts,** all of Hattiesburg, for appellee on suggestion of error.

56

Argued orally by **T. W. Davis**, for appellant, and by **Rowland W. Heidelberg**, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

At the request of the appellant, the tax assessor of Forrest county back-assessed timber growing on land owned by appellee, for the years 1930 to 1932, inclusive, and thereafter for the year 1933; it having, according to the assessor, escaped taxation for those years. These assessments were approved by the board of supervisors, but were disapproved and set aside by the circuit court on appeal thereto. The real property rolls in use during these years are ruled so as to disclose:

(1) The number of acres of cultivatable land, the

value thereof, excluding buildings, improvements, and timber, and the value of buildings and improvements thereon.

(2) The number of acres of timbered lands, its value, excluding timber and improvements, the number of thousand feet of board measure timber, and the value of the timber thereon. And

(3) The number of acres of uncultivatable land, and its value, excluding buildings, improvements, and timber.

The appellee, in returning this land for assessment for each of these years, listed the land, on which the timber here in question is, as uncultivatable land, without disclosing the value of the timber, if any, thereon, and the land was accordingly assessed. There was timber growing on the land.

The statute here governing is chapter 58, Extraordinary Session of the Legislature of 1928, which was brought forward into the Code of 1930 as section 3145 thereof.

The appellee's contentions are: First, that this statute does not require timber on land to be assessed separately; and, second, if it does so require, the assessments made are res judicata. The statute, after providing that the land shall be assessed at its true value, continues: "Every person owning or being in possession, or in charge, of any land shall deliver to the tax assessor on demand and not later than April first in each year in which land is assessed, a list of all lands owned by, or in possession, or charge, made out on the tax lists prescribed; and showing the total number of acres (except the land be platted by blocks and lots), the total number of acres of cultivatable lands and the value thereof, the total number of acres of timbered lands and the value of the land, and the number of thousand feet of timber thereon and its value, and the number of acres of uncultivatable land and the value thereof; and buildings or improvements subject to taxation on any lands

returned for assessment. . . . If any person shall deliver or disclose to an assessor, or deputy assessor, a list, statement, or return in regard to his land which, in the opinion of the assessor, or deputy assessor is false or fraudulent, or contains any understatement or undervaluation, or fails to show the proper classification of lands or fails to show timber, buildings and improvements, or other elements of value, the assessor shall make an assessment of the land with the proper classification thereof including the omitted things, at a valuation equal to the highest value at which like lands similarly situated are assessed. Lands not given in by any person shall be assessed in the same manner by the assessor at a valuation equal to the assessment of other like lands similarly situated and all timber, buildings, and improvements, or other elements of value shall in all cases be separately valued and assessed."

The appellee admits that this statute requires the assessor, when assessing "lands not given in by any person," to separately value and assess the timber growing thereon, but says that a separate assessment of timber is not required where the land has been given in for assessment. Its argument, in substance, is that requiring persons giving in land for assessment to set forth the improvements and timber thereon, and their value, is for the purpose of enabling the assessor to properly arrive at the true value of the land, and that requiring the assessor, when assessing land not given in, to separately value and assess the timber and improvements thereon, is for the reason that the improvements and timber may be owned by one person, and the land itself by another, in which event, section 3146, Code of 1930, requires a separate assessment, and the assessor in making the assessment would not know whether there were separate ownerships.

We are unable to agree with this interpretation of the statute. It requires a person, giving in land for assessment, to disclose the value of the timber and improve-

ments thereon, and concludes as follows: "And all timber, buildings, and improvements, or other elements of value shall in *all cases* be separately valued and assessed." (Italics ours.)

But appellee says that this language refers only to assessments made by the assessor on property not given in therefor. The requirement is that "lands not given in by any person shall be assessed in the same manner by the assessor," manifestly meaning in the manner that land is assessed when given in therefor, and that the words "in all cases," unless limited by construction, cover all assessments made by the assessor, whether given in therefor or not. Had the Legislature intended to limit such assessments to those initiated by the assessor, it could have, easily and definitely, so provided by using the words "in such cases," instead of the words "in all cases."

This being the requirement of the statute, the timber on the land has escaped taxation, and the assessment of the land alone was not an adjudication by the board of supervisors that there was no timber on the land, or that the timber thereon was of no value. Darnell v. Johnson, State Revenue Agent, 109 Miss. 570, 68 So. 780. In that case the writer hereof expressed a contrary view, but a majority of the court disagreed with him. The judgment of the court below will be reversed.

At the trial on the appeal to the court below, the parties agreed on the amount of timber on the land and its value. This amount and value were different from that assessed and approved by the board of supervisors. The court below should have approved the assessment of the timber, but should have set aside the order of the board of supervisors insofar as it fixed the amount and value of the timber, and should have entered an order fixing the amount and value thereof as per the agreement of the parties. This will be done here.

Reversed, and judgment here for the appellant.

On Suggestion of Error.

**Smith, C. J.**, delivered the opinion of the court on suggestion of error.

The appellee suggests that, assuming that the opinion hereinbefore rendered when we reversed the judgment of the court below is otherwise correct, we erred in holding that the timber had escaped taxation. In so holding, we were attempting to follow the case of Darnell v. Johnson, State Revenue Agent, 109 Miss. 570, 68 So. 780, 784. But on a reconsideration of the case, we are of the opinion that that case is not controlling, and that the original assessment herein precludes the back assessment of the timber herein attempted to be made.

In the Darnell Case, supra, the headings of the assessment roll there under consideration which are pertinent here were: (1) "Number of Acres of Wild and Uncultivated Lands." (2) "Valuation of Wild and Uncultivated Lands Excluding Timber." (3) "Estimated Number of Feet of Timber Thereon." And (4) "Valuation of the Timber Thereon." The land there was assessed only under the first of these two headings, nothing appearing under the headings, "Estimated Number of Feet of Timber Thereon" and "Valuation of the Timber Thereon." The court held that, in approving the assessment, the board of supervisors necessarily adjudged that the land contained timber, and as nothing appeared under the headings "Estimated Number of Feet of Timber Thereon" and "Valuation of the Timber Thereon," the timber had escaped taxation.

The headings of the roll here differ from the headings there.

The statutes do not prescribe the form of the tax lists on which landowners shall return their land for assessment of taxes, nor the form of the assessment roll, but sections 3129 and 3133, Code 1930, which appeared in former statutes, empower the state tax commission to

prescribe the forms thereof. Section 3145, Code 1930, which appeared in a former statute, directs landowners to return their land for assessment "made out on the tax lists prescribed; and showing the total number of acres (except the land be platted by blocks and lots), the total number of acres of cultivatable lands and the value thereof, the total number of acres of timbered lands and the value of the land, and the number of thousand feet of timber thereon and its value, and the number of acres of uncultivatable land and the value thereof; and buildings or improvements subject to taxation on any lands returned for assessment. If the lands be surveyed and platted it shall be returned so as to clearly identify it by the recorded plat thereof, and the list rendered shall disclose the value of each lot and the value of any buildings, structures, or improvements thereon." This section separates land for the purpose of taxation into three classes: Cultivatable land, timbered land, and uncultivatable land. Its clear intent is that all land containing timber, whether cultivatable or not, should be listed as timbered land, and that the amount and the value of the timber thereon should be stated. Had the assessment roll conformed strictly to this classification, no trouble would here arise, and the original assessment of the board of supervisors herein would be res judicata. The trouble arises because the assessment roll prescribed by the state tax commission adds something to the classification of uncultivatable lands that does not appear in the statute. That assessment roll and the one here used by the tax assessor, insofar as it bears hereon, is as follows: It contains a double column headed "Cultivatable Lands," the two subcolumns thereunder being headed (1) "Number of Acres," and (2) "Valuation Excluding Building and Improvements;" next, a single column headed "Valuation Buildings and Improvements on Country Lands;" next, a column headed "Timbered Lands," immediately under which appears the following: "All lands having timber must be listed in this

space." Four subcolumns appear under this general heading: (1) "Number of Acres." (2) "Valuation Excluding Timber and Improvements." (3) "Number of Thousand Feet, Board Measure of Timber." (4) "Valuation of Timber Thereon." Next a double column headed "Uncultivatable Lands." Two sub-columns appear thereunder headed: (1) "Number of Acres," (2) "Valuation Excluding Buildings and Improvements and Timber," and next a single column headed "Total Number of Acres of Country Lands." The value of the building and improvements on "Uncultivatable Lands" could and should appear in the prior column headed "Valuation Buildings and Improvements on Country Lands." The roll contains no column under which the value of timber on such lands could be listed. It could not be listed under the quadruple column headed "Timbered Lands," for all land containing timber should have been included in the number of acres listed as timbered lands.

It was manifestly the intention of the tax commission that no land should be listed as uncultivatable which contained timber of taxable value. This is made clear by an annotation on the roll that the number of acres set forth under the headings, cultivatable, timbered, and uncultivatable lands should equal the number of acres appearing under the column headed "Total Number of Acres of Country Lands." This being true, when the board of supervisors approved this assessment with no land appearing thereon as timbered lands, it adjudicated that none of the land returned for assessment contained taxable timber.

This conclusion is reinforced by what occurred here. This land is wild and cutover land; i. e., all of the timber which the owner considered merchantable had been cut therefrom. The assessment lists given the assessor by the appellee all conformed to the one now to be set forth:

Tax List of Realty Owned by J. J. Newman Lumber Company. January 1st, 1932, in Forrest County, Miss.

| Description | Section | Wild and Uncultivated land | | Value of Improvements | Timbered Land Estimated Value |
| --- | --- | --- | --- | --- | --- |
| | | Acres Land | Value | | Acres No. M. Timber Feet |
| Township 5 | Range 14 W | | Cut-Over or Stripped Land | | |
| NE¼ and E½ of | | | | | |
| NW¼ | 30 | 240 | $960 | | |
| SE¼ less 3 acres | | | | | |
| to MCRR., | 31 | 154 | 620 | | |
| NW¼ | 32 | 160 | 640 | | |
| S½ of SW¼, and | | | | | |
| SW¼ of SE¼ | 33 | 120 | 480 | | |
| | | | Total Valuation | | |

An agreed statement of facts discloses ''that it was the uniform custom during each of the years involved, and still is, for the Tax Assessor of Forrest County to enter in the same column and in the same manner as the assessments involved in this case, all wild and uncultivated land having no timber thereon, and all cutover lands having no timber thereon.''

After reaching this conclusion, we ascertained from the records of the state tax commission that such was its interpretation of the assessment roll. Its records disclose the rules and regulations sent out by it to the tax assessors and clerks of the boards of supervisor, explaining the assessment roll and what should be done by the assessors and boards of supervisors relative thereto, in which this appears:

''Classification of Lands. Some confusion might arise in the assessor's mind as to the meaning of the phrases: 1. 'Cultivatable Lands,' 2. 'Timbered Lands,' and 3. 'Uncultivatable Lands.' . . .

'' 'Cultivatable Lands' should include the following types of land: (specification thereof omitted).

'' 'Timbered Lands' should include the following:

''(e) Lands covered with merchantable timber; that

is regardless of kind, timber which can be sold in markets. It would necessarily be timber out of which lumber, ties, staves, spokes, shingles, boards, heading, pulp wood, laths, etc., could be made. Lands covered by small trees (out of which the foregoing cannot be made, but out of which fire wood can be made) are not to be classified as 'Timbered Lands' but as 'Uncultivatable' if the soil and surface are not susceptible of agriculture, or trees and undergrowth so dense that the lands cannot be cultivated without unusual clearing.

" 'Uncultivatable Lands' should include the following:

"(f) Gullies, sand beds, and hills, which cannot be used for agricultural purposes; lowlands, which are so often overflowed, that they cannot be used for agriculture.

"(g) Lands so thickly in stumps or small trees as not to be susceptible of agriculture.

"(h) Lands so lacking in fertility that the soil is not capable of producing crops by the use of ordinary methods of preparation and the ordinary use of fertilizer."

It is clear from this that the state tax commission interpreted the assessment roll as requiring no timbered land to be listed under the heading "Uncultivatable Lands," but that all such should be listed under the heading "Timbered Lands." We have set forth these rules and regulations, not as indicating that we could look thereto in deciding this case—as to which we express no opinion—but merely to show that we have interpreted the roll as the state tax commission itself did.

The suggestion of error will be sustained, and the former opinion, insofar as it conflicts herewith, will be hereafter disregarded. The judgment of reversal hereinbefore rendered will be set aside, and the judgment of the court below will be affirmed.

So ordered.