Miller, State Revenue Agent, v. Copeland's Estate.*

(In Banc. May 11, 1925.)

[104 So. 176. No. 24659.]

Taxation. *Though owner failed to fill out columns of tax list, back assessment of growing timber for years that taxes against lands were paid not permissible.*

Where lands were assessed for the years 1919-1923, and the assessments approved by the board of supervisors, and the taxes paid, there can be no back assessment for those years of timber growing on the land, though the owner of land and timber in filling out tax list failed to make entries in columns other than those providing for description of lands and their value. (Affirmed by divided court.)

---

*Headnote 1. Taxation, 37 Cyc., p. 1018.

Appeal from circuit court of Tishomingo county.
Hon. C. P. Long, Judge.

Back assessment by W. J. Miller, state revenue agent, of timber on lands of the estate of Dr. Oscar Copeland, deceased, was disapproved by the board of supervisors, and from a judgment of the court affirming decision of the board, he appeals. Affirmed.

*Mitchell & Clayton,* for appellant.

This is an attempt to assess timber which has "escaped taxation," as the appellant contends. The real issue in the case is whether or not this timber has "escaped taxation." It is agreed that Doctor Copeland owned the timber standing on this land at the time assessments were made and it is agreed that if any assessment is made that the proper amount to be assessed is that shown "in pencil" on the blank assessment included in the record.

It is also agreed that the land on which this timber was located was assessed and the taxes paid on same. A copy of the assessment rolls for the years 1917 to 1923 inclusive forms a part of the record. The clerk used a page from the assessment rolls in making this copy. From this it is shown that for the years 1917, 1918, 1919 and 1920, the timber was assessed as required by law. That is, the valuation of the land excluding timber was given and then the number of thousand feet of timber was given, and the valuation of the timber separate from that of the land. There can be no complaint about the assessments until the year 1921.

From that date the court will see that the land was assessed as uncultivatable lands without any valuation being given of the timber and without stating that there was any timber on the land. This was a deliberate policy on the part of the assessor and board of supervisors adopted in 1920, not to make any assessment of timber growing on these lands. Appellant contends that under *Darnell* v. *Johnson, State Revenue Agent,* 109 Miss. 570, this timber has "escaped taxation." Section 4281, Code 1906.

This section of the Code provides the manner of assessing land. Section 112 of the Constitution provides that all property shall be assessed at its "true value," and that taxes shall be uniform and equal throughout the state. The Darnell case above cited is directly in point and is absolute authority for sustaining this assessment.

The land referred to in section 3 in that case was assessed in the same manner as the land in the case at bar. It is true that chapter 89, Laws of 1912, providing for the form of assessment rolls has been repealed since the decision in the Darnell case, by chapter 135, Laws of 1918, but the court will see that this decision is not based upon the provisions of chapter 89, Laws of 1912, but the court holds that the making of assessments in the manner in which this one was made violates both equality and uniformity clauses of the Constitution regardless of any statute. Chapter 89, Laws of 1912, simply specified what the roll should contain, while chapter 135, Laws of 1918, says that the state tax commission may prescribe the form for the assessment and the supreme court held in *Bailey & Bean* v. *Wilson*, 90 So. 362, that chapter 135, Laws of 1918, was constitutional, and that the tax commission could prescribe the form for making assessment.

This form was furnished with a column for the assessment of timber, but the board of supervisors and the tax assessor intentionally ignored this column in making the assessment. The land in this case was not assessed at its true value, but was arbitrarily and intentionally valued by excluding one element of value, that is, the value of the timber on the land. This renders the assessments absolutely void and therefore the property has "escaped taxation."

Counsel for appellee contends that chapter 89, Laws of 1912, was mandatory. The court has never held this statute to be mandatory. The statute only provided a form for the assessment roll. This statute provided that the auditor of public accounts should furnish suitable

land assessment rolls setting out the blanks which should be thereon. It did not attempt to prescribe an additional method of assessing land from that already provided by law and it does not provide that all of the blanks on the roll should be filled in.

Section 2 of the repealing statute which is chapter 135, Laws of 1918, provides that: "The assessor shall so fill all blanks on such rolls as to disclose clearly and fully each item of information indicated on said roll."

It will be seen that under the law as it now exists it is made mandatory upon the assessor to fill all blanks on the roll so as to disclose clearly and fully each item of information indicated on said roll.

We are aware of the fact that in *Adams, Revenue Agent,* v. *Luce,* 87 Miss. 220, the court held that property could not be classed as having "escaped taxation" even though such assessment was void. In that case however, Judge WHITFIELD says that "property may escape taxation in varied ways, as, for example, (a) by being will-fully withheld from the assessor by the owner, or (b) by being inadvertently or accidentally admitted by the own-er in returning his property to the assessor." For that definition of the property escaping taxation applied to the facts in this case, it is clear that the owner willfully withheld the timber from the assessor.

A still later case as to the void assessment proposition is *Roberson* v. *Bank of Yazoo City,* 85 So. 177. That case was decided *in banc* by divided court. Three of the judges held that a void assessment amounted to no assessment and the other three held that although the assessment was void, the property could not have been held to have "escaped taxation."

We submit that the Darnell case has been in no way overruled and it is absolute authority for making these assessments. The last case of *Roberson* v. *Bank,* was not a timber assessment, but one assessment of a bank in which there could be no separate items of valuation. The assessment had to be made as a whole. Our contention

is that so long as the holding of the court in the Darnell case is upheld that timber must be assessed in addition to the assessment on the land. The manner of making this assessment amounts to a fraud whether any was intended or not. The action of the owner in withholding the timber from the assessor and the action of the assessor and the board of supervisors in failing to include the timber in the assesment was a fraud upon the public and rendered the assessment void. The assessment of land without the timber is not an adjudication of the matter.

*J. H. Sumrall,* also for appellant.

The one important fact upon which a decision must depend is: "Has the property sought to be back assessed in fact 'escaped taxation'?"

The cases of *Adams* v. *Luce,* 87 Miss. 220; *Darnell* v. *Johnson,* 109 Miss. 570, with its wholesome pronouncement of the general rule; *Long-Bell Company* v. *McLendon,* 127 Miss. 636, with its isolated and peculiar facts; and *Bailey and Bean* v. *Wilson,* 128 Miss. 49, can all be reconciled in the light of the one paramount question as to whether or not the property which is sought to be back assessed in fact has passed under the eyes of, and been considered with all of its elements of value, by the taxing authorities charged with the duty of fixing valuations and approving assessments, and I concede for the purpose of this argument that when it affirmatively appears that any property has been properly considered, with all of its elements of value fully disclosed, and a final approval made by the board of supervisors of the county in which the property is situated, and a valid, final judgment entered, then such final judgment is just as conclusive on all parties concerned, if no appeal is taken, as the judgment of any court of superior jurisdiction, but subject, of course, to the same collateral attack for fraud, as is the judgment of any other court.

A tract of land consisting of 480 acres was assessed in former years, including 1919 and 1920, under the heading "Timbered Lands," and the value of the land, excluding timber, was fixed at one thousand one hundred dollars for the tract, while the timber on this same land was separately listed and valued at three thousand four hundred and twenty dollars, making the total value of all the elements of value on this land, as assessed, four thousand five hundred and twenty dollars; but in the new and changed form of the assessment, as shown on the rolls for the latter years for which the timber is sought to be assessed, this same four hundred and eighty acres of land appears on the rolls under the heading— "Uncultivatable Lands," and the only thing valued is the land, and that for the munificent sum of eight hundred dollars; which appears as the total value of this land in the "total valuation" column as against the total valuation of the same land in the year just prior, when properly assessed at four thousand five hundred and twenty dollars.

No claim is made that any of the timber had been cut from this land in the latter years, nor is any other claim made that anything had happened that had caused this sudden and remarkable shrinking in value, and change in the character of the timbered land, as shown on the former rolls; and this court will know judicially that as a matter of fact the trend of the price of timber has been upward in these latter years, but the change cited is typical of the reclassification of value of all the timber included in this assessment under consideration, so this glaring discrepancy can be explained in one, and only one way, and that is that the timber on the lands in question has not only completely escaped taxation, but that more than twenty-seven per cent of the valuation of the land, alone, has also escaped its proportionate burden of taxation.

Acquiescing in the rule seemingly adhered to by the court in several cases heretofore decided, the land cannot

be back assessed, although it has plainly and flagrantly escaped its duty to bear its share of the burden of taxation, but surely it cannot be said that the timber on the land has been assessed.

All discussion with reference to the effect of chapter 135, Laws of 1918, in repealing chapter 89, Laws of 1912, may be thrust aside in the consideration of the question now before the court; as the only necessary feature of either of said acts to be considered by this court is the fact that the scheme provided first by chapter 89, Laws of 1912, has been continued by the tax commission under authority of chapter 135, Laws of 1918, in prescribing the machinery or method by which all property to be assessed may be separated into its several elements of value, for the purpose of definitely and intelligently disclosing what has been assessed. Any discussion as to the validity of such authority as is conferred by chapter 135, Laws of 1918, on the tax commission has been foreclosed by *Bailey and Bean* v. *Wilson*, 128 Miss. 49, in which it was held that such authority as has been delegated to the tax commission, in authorizing said commission to prescribe the form of assessment rolls is not such a delegation of authority as to be unconstitutional.

The only theory upon which it could be claimed that the property sought to be back assessed by this proceeding has, in fact, been assessed, would be that the judgment of the board in approving the assessment of this land, under the heading "uncultivatable land" necessarily included all elements of value on the land thus classified, regardless of the fact that the classification is erroneous, and fails to properly describe the land, shown by the face of the record to have been timbered lands, including a separate and more valuable element, to-wit: timber, which was necessarily excluded in making the classification; and also on the theory that the adjudication by the board of the fact that the particular land in question was the less valuable "uncultivatable land," would, therefore be *res adjudicata,* regardless of the fact

that the record before this court affirmatively shows that such classification and valuation are absolutely erroneous and inadequate. If it should be contended that the judgment of the board was conclusive as to the classification of property, and consequently the form of its assessment, just as though it was simply an inadequate valuation of property actually assessed; and that such adjudication would be *res adjudicata* for all purposes, then the question immediately presented to this court, on the face of the very record in the case, is, is not such judgment manifestly erroneous, and obviously procured by fraud, either actual or constructive?

That fraud vitiates anything into which it enters is a maxim of our jurisprudence older than the system of jurisprudence itself, and is a wholesome rule that has never, and will never be overturned in a court of justice, and the universal rule with reference to judgments tainted with fraud being subject to collateral attack, especially by third persons who were not parties to the original proceeding in which the judgment was obtained is also universally recognized, and would necessarily arise in this case if it should be seriously contended that the judgment of the board of supervisors in approving the assessment of the land and timber as "uncultivatable lands" should be plead as *res adjudicata* in an effort to separately assess the timber which has manifestly escaped taxation for the years involved.

The two subjects of collateral attack and *res adjudicata* bear a fundamental relationship to each other which it is advisable to consider at the very outset. Each subject involves a discussion of the effect of a judgment in a subsequent legal proceeding. If proceedings are void for lack of jurisdiction, or any other reason, the judgment rendered therein is said to be subject to collateral attack. When the judgment can be collaterally attacked, its force is so far destroyed that questions which the court considered in reaching its conclusion can no longer be deemed *res adjudicata.* In other words, one prereq-

uisite to the conclusion that a question is *res adjudicata*, by virtue of its having been determined in prior legal proceedings, resulting in the judgment of the court, is that such judgment must not be subject to successful collateral attack. That this may be an easy method of handling a complicated case is apparent when it is considered that if a judgment is void, the conclusion follows that it is subject to collateral attack, and also that it cannot serve as a basis for the application of the rule of *res adjudicata*. Under each aspect of the case the same principles as to the validity, or invalidity of judgments are involved.

It is a well-settled general rule that whenever the rights of third persons are affected they may collaterally attack a judgment for fraud committed by one party, or for collusion of both parties. The principle that the party affected by a judgment obtained through fraud may collaterally attack it applies to all sorts of judgments, and decrees. For example a collateral attack for such cause may be made on judgments by default, or by confession, or on judgments *in rem*. 34 C. J. 526, citing *Berman* v. *Hutcheson*, 60 Miss. 872; *Valentine* v. *Mc-Grath*, 52 Miss. 112.

The appellant in the case at bar was a stranger to such judgment as may be urged by the appellee as *res adjudicata*, in that the board of supervisors of Tishomingo county, in approving the land rolls of said county for the year 1921, 1922, 1923 and 1924, on which the property sought to be assessed, if assessed, was incorrectly designated under the heading "uncultivatable lands," and a valuation grossly inadequate, as shown on the face of this record, thereby fixed, and this being true, the appellant, the present revenue agent, while not a party in any sense, nor being in privity with any of the parties to the proceeding in which said judgment was entered, he being vitally interested, and the rights of the state of which he is guardian being injuriously affected by such a fraudulent and improper judgment, would come clearly

within the rule. For the rule with reference to the invalidity of a judgment obtained by fraud which has been subscribed to by this court, see 34 C. J. 566, citing *Plummer* v. *Plummer,* 37 Miss. 185; *Weems* v. *Vowell,* 122 Miss. 342; *McRaney* v. *New Orleans, etc., R. R. Co.,* 128 Miss. 248.

That this brief review of the authorities of this state, which conclusively demonstrates that the general rule hereinbefore announced with reference to collateral attack for fraud of any judgment of any court, as so recently announced by the present court, and so whole-heartedly subscribed to, leaves no doubt in the mind of anyone that with the evident fraud shown on the face of the record in this case by the copy of the assessment roll, properly in this record, I contend that if the court should conclude that the assessment relied on by appellee as a judgment, which would be *res adjudicata* on the question presented to this court by this record, then, this court, of its own motion, having in mind this wholesome rule with reference to the invalidity of a judgment manifestly tainted by fraud, could not avail the appellee in this case as a sufficient opportunity to reopen the question heretofore foreclosed by the void judgment on account of the fraud entered thereinto, as a sufficient defense to the efforts of the revenue agent to have assessed timber which has, on the face of the record, manifestly escaped taxation.

*W. D. Conn,* for appellee.

The land described by government survey had been regularly taxed, and the taxes had been paid. Dr. Copeland owned the timber on these lands, and the timber was not separately assessed. The trial court held that, under these facts, the timber had not "escaped taxation."

Counsel for appellant say that for the years 1917, 1918, 1919 and 1920, the timber was assessed as required by law; but they complain of the assessments thereafter made. The law requiring separate assessments of land and timber was repealed in 1918, and no doubt that in

the course of time this taxpayer found it out and thereafter discontinued to split up the assessment, the law not requiring it. And it is argued by counsel that the drop in the assessment of this land is evidence that the assessor and board of supervisors had adopted the policy of not making any assessment of this timber. But the fact that the land may have been valued at less than it should have been does not mean that it has "escaped taxation." The very case that counsel is relying upon for a reversal in this case, *Darnell* v. *Johnson,* 109 Miss. 570, expressly holds that gross undervaluation is no reason for opening up an assessment that has been regularly made according to law, and finally disposed of by the proper authorities. It is true that land is to be assessed at its "intrinsic value," as provided by statute, and at its "true value," as required by the state Constitution. But these are questions for the taxing authorities, and are not for the courts, except on appeal bringing them up for review. If this timber has been assessed at all, it is *res adjudicata,* and this court will not inquire into the matter of its valuation, be it high or low. We say this much to get down to the question at issue: Has this timber "escaped taxation?"

In answering the question just propounded, it might be well to examine the decisions of this court both before the passage of chapter 89, Laws 1912, and after its repeal, by chapter 135, Laws 1918, as well as those made under it.

Section 4281, quoted by counsel, was in full force and effect when *Eureka Lumber Co., et al.,* v. *Terrell,* 48 So. 628, was decided by this court. This was a suit by Terrell to quiet the title to land bought by him at a tax sale. It seems the land belonged to one party and the timber to another, and the assessment had been to an unknown owner; and there was no separate assessment of the land and timber. In answering the bill, the owner of the timber claimed that Terrell got only the land and not the timber, as only the land was assessed. The Chancellor held that the purchaser of the tax sale acquired not only

the land but the timber also, and this was affirmed by this court. Under the authority of this case, that is, the Terrill case, there can be no doubt, I suppose, that if the land involved in this case had been sold for taxes, the purchaser would have acquired not only the land but also the timber.

Counsel for appellant relied on the case of *Darnell* v. *Johnson,* and contend that it is applicable to the case at bar. They seem to concede that if this case was decided on chapter 89, Laws of 1912, it would not now be authority; for they say: "But the court will see that this decision is not based upon the provisions of chapter 89 of the Laws of 1912, but the court holds that the making of assessments in the manner in which this one was made violates both equality and uniformity clauses of the Constitution regardless of any statute." We do not so understand the case.

The "equality and uniformity" clause of the Constitution applied to the assessments in the Darnell case to the lands in section 11 no more than it did to those in section 3; yet the reassessment of lands in section 11 was disapproved, while that of lands in section 3 was approved. It was claimed that the timber in section 3 had escaped taxation, and that in section 11 had been grossly undervalued. If the case was decided on "equality and uniformity" why were they not treated alike? The answer is plain. The assessment of the land in section 11 had been made in accordance with chapter 89, Laws of 1912, and the assessment of the land in section 3 had not been made in accordance therewith, and the statute being held mandatory by the majority of the court, the reassessment on the former was disapproved, while that on the latter was approved.

After the Darnell case was decided, and after the repeal of chapter 89, Laws of 1912, *Bailey & Bean* v. *Wilson,* 90 So. 362, came up. There the real issue before the court was whether or not timber on land, which had not been assessed separate from the land, had "escaped taxation" in such sense as to make it subject to assess-

ment by the revenue agent, as back tax collector. The contention was made that chapter 89, Laws of 1912, had not been repealed by chapter 135, Laws of 1918; and that the timber could be back assessed under that statute, as construed in the case of *Darnell* v. *Johnson.* The court held, and necessarily so, that chapter 89, Laws of 1912, was repealed by chapter 135, Laws of 1918; consequently the assessing officers were without authority to make the assessment. If counsel for appellant had not had this case *Bailey & Bean* v. *Wilson,* before them they might have had some show of reason for contending that the case of *Darnell* v. *Johnson,* was decided on the constitutional question of "equality and uniformity." But for this case, SMITH, C. J., might have been mistaken when he "understood" that the majority of the court held chapter 89, Laws of 1912, mandatory, and that an assessment of timber lands not made in accordance with its requirements was void. But with the case of *Bailey & Bean* v. *Wilson,* construing the *Darnell* v. *Johnson* opinion, it would seem its meaning ought to be clear. The Bailey & Bean case was decided after the repeal of chapter 89, Laws of 1912, but the "equality and uniformity" requirement of the Constitution was still intact. To argue that *Darnell* v. *Johnson,* was decided on "equality and uniformity" is to argue that Bailey & Bean was an erroneous pronouncement of law and ought to be overruled. But as counsel are relying on this case, we do not suppose they so contend. If they concede the authority of this case, their client is out of court; for their contention was conclusively disposed of by it.

From the foregoing it is evident that the case of *Darnell* v. *Johnson,* was a construction and application of chapter 89, Laws of 1912, to a case precisely similar to the case at bar; that the back assessment was upheld because the original assessment had not been made in conformity with the requirements of this act. If this be true, then *Darnell* v. *Johnson,* ceased to be an authority on back assessments of timber in cases similar to it when,

and as soon as, the said act was repealed. Appellant's cause must fail, so far as he relies on *Darnell* v. *Johnson*.

But appellant says he also relies on section 2, chapter 135 of Laws of 1918, to sustain his contention; for the assessor shall so fill all blanks on such rolls as to disclose clearly and fully each item of information indicated on said roll. His reasoning seems to be about as follows: The legislature has given the tax commission the power, and made it its duty, to prescribe tax assessment forms; the commission has prescribed a form for the assessment of timber lands whereby the land and the timber are to be valued separately; the tax assessor did not fill out the timber blanks, failing to give the "information" relating thereto, as mandatorily required by the statute; therefore, this timber has "escaped taxation."

We maintain that this construction of the statute would make it clearly unconstitutional. The action of the tax commission, in prescribing "forms," would thus cease to be a matter of mere administrative detail, and become one of a positively vital and substantive nature. There could be no difference between conferring direct legislative power upon the tax commission, and the giving to it of the mere power to prescribe forms for tax assessments, an administrative detail, and at the same time in another statute mandatorily sanction and approve, in advance, anything it might do, and give it the same force and effect as if it were wholly an act of the legislature itself. This construction goes too far, and this reasoning proves too much. It is precisely the same as giving the tax commission power, *carte blanche,* to legislate.

In the recent case of *Austin* v. *Sullivan,* 100 So. 275, this court held that where land had been assessed under a sufficient assessment and taxes paid accordingly, no part thereof could thereafter be sold for the nonpayment of taxes, though there might have been another and different assessment of some of the same land, which was in itself correct. The descriptions of all the different pieces of land upon which the Copeland timber was growing, on the tax rolls of Tishomingo county, were "plain and un-

ambiguous,'' and have all been paid upon, as shown by the agreed statement of facts in the record. Under the decision of the Austin case, just mentioned, to permit now the assessment of the timber would be to permit a double assessment of this land. It is common learning that "land" includes the timber growing thereon, just as much as it does the soil. It is all one. The act of the legislature of 1912, chapter 89, had the effect of changing this rule, and of separating this one estate into two for the purpose of taxation. By chapter 135, Laws of 1918, the legislature repealed this law, and the effect of it was to leave the old rule in full force and effect. The description by which this land was assessed includes absolutely everything, *ab inferno ad usque coelum*. This has been the common-law rule for a thousand years, and it most assuredly cannot be abrogated by a mere administrative order of the state tax commission.

There is no law for the back assessment of this timber, and the action of the trial court in so holding should be affirmed by this court.

*J. G. Holmes,* also for appellee.

The case presents the direct question as to whether or not the law as now written in Mississippi absolutely requires the separate assessment of land and timber, and as to whether or not under existing law the assessment of the land without a separate assessment of timber includes all estates in the land, and is final and conclusive when approved by the board.

Judge LONG, in a written opinion to be found in the record, held that the *Darnell case,* 109 Miss. 570, was not now applicable for the reason that chapter 89, Laws of 1912, which that case interpreted, was expressly repealed by chapter 135, Laws of 1918, and further held that since the passage of chapter 135, Laws of 1918, there has been, and is now, no law in Mississippi requiring the separate assessment of land and timber, and that the assessment

of the land includes the timber, and is final and conclusive when approved by the board, citing *Eureka Lumber Co. et al.*, v. *Terrell*, 48 So. 628, and *Bailey & Bean* v. *Wilson*, 128 Miss. 49.

We respectfully submit that the judgment of the lower court in this case is correct, and should be affirmed, for two reasons:

## I.

The case of *Darnell* v. *State Revenue Agent, supra.*, even if applicable, is unsound, and should be overruled. I respectfully submit that chapter 89, Laws of 1912, was directory only. It was enacted, not for the protection of the individual, but for the protection of the state, and for the purpose of furnishing a guide to its officers in making the assessment. A disregard of its provisions, therefore, did not vitiate the assessment. Certainly, the provisions of chapter 89, Laws of 1912, are no less directory than the provisions of section 4283, Code of 1906, providing how the roll is to be made up, and providing that all the subdivisions of a section shall be set down if they belong to different persons. In *Moores* v. *Thomas, et al.*, 48 So. 1025, this court held that the provisions of section 4283, Code of 1906, were directory only, and that the assessment *in solido* of two tracts of land belonging to different individuals, did not invalidate the assessment. Section 4283, Code 1906, and chapter 89, Laws of 1912, were enacted for the same purpose, that is, for the protection of the state and to furnish a guide to its officers in making the assessment. Certainly, if the one is directory, there is no reason for holding that the other is any the less directory, and the conclusion must be reached, therefore, that the provisions of chapter 89, of the Laws of 1912, are directory merely, and that the failure to comply therewith does not invalidate the assessment. This being true, the action of the board of supervisors in approving the assessment in the Darnell case, was conclusive, and foreclosed any right to go behind the same.

Conceding for the sake of argument, however, that the provisions of chapter 89, Laws of 1912, were mandatory, I respectfully submit that the assessment of the land in section 3 as originally made, was *res adjudicata*. At the time this assessment came before the board for approval, we must assume that the question of timber in connection with the assessment was brought directly to the attention of the board. The board had before it the entire assessment roll which contained, among other columns, columns for the valuation of the land excluding timber, columns for the valuation of timber, and a column for the grand total valuation. Section 4281, Code 1906, required the board to assess the land according to its intrinsic value, taking into consideration improvements, etc., and any other circumstances that tended to enhance its value, of which provision of the law, it must be assumed, the board was cognizant. With this roll before it, and with this knowledge of the law, the board valued this land, excluding timber, and placed no valuation in the column provided for the valuation of timber, and then extended the grand total valuation of the assessment. It is apparent, therefore, that the board considered the question of timber, and either considered it valueless, or else took into consideration the timber, in assessing the land. As Judge SMITH said in his dissenting opinion, certainly, if the board had written the word "nothing" in the column provided for the valuation of timber, it would have followed necessarily that the assessment would have been *res adjudicata*. When the board had before it the whole assessment roll containing a column for the valuation of timber, and then valued the land after taking, as it must have taken, all the columns of the roll into consideration, and then extended the total valuation into the grand total valuation column, it must necessarily follow that in the grand total valuation column the board valued the land and all estates therein.

In the case of the lands in section 3, the board had before it all of the elements of value as much so as in the

case of the lands in section 11, and affirmatively decided the total valuation in each case. The only difference is that in the case of the lands in section 11, the board considered the timber of some value, and so adjudicated, and in the case of the land in section 3, the board either considered the timber of no value and so adjudicated or else by entering the total value in the grand total valuation column, they adjudicated that this was the total value, including timber and every other element that went to make up the value. In either event, the question was foreclosed by the principles of *res adjudicata.* I therefore submit in all earnestness that the holding of the majority in the Darnell case is unsound, and that this case should be overruled and the holding of the dissenting opinion adopted as the correct pronouncement of law.

## II.

Land and timber are not required to be separately assessed under existing law. There is no legislative act which mandatorily requires the separate assessment of land and timber. If it could be said, which I do not concede, that chapter 89, Laws of 1912, mandatorily required the separate assessment of land and timber, then that law has been expressly repealed by chapter 135, Laws of 1918. It is true that chapter 135, Laws of 1918, empowered the state tax commission to prescribe the form of the assessment roll, and further provided that the assessor should fill all blanks on such roll so as to disclose each item indicated thereon. This, however, falls far short of any legislative act which requires land and timber to be separately assessed. The state tax commission was not empowered, and could not have been constitutionally empowered, to legislate with respect to assessments of property. It was simply empowered to prescribe the forms of the roll in accordance with the assessment of property which had been authorized by the legislature, since only the legislature could authorize assessments. Under the acts of the legislature land

is required to be assessed, and the board in assessing land is authorized to take into consideration all circumstances which tend to enhance its value. The state tax commission, under chapter 135, Laws of 1918, could not therefore require the separate assessment of land and timber. If the act were construed so as to give it this power, the act would be unconstitutional as delegating legislative power. This court, in *Bailey & Bean* v. *Wilson*, 128 Miss. 49, expressly held that the vesting of the state tax commission with the power to prescribe the roll "related to a mere administrative detail." The prescribing of the roll by the state tax commission, therefore, could be merely directory, and certainly no less directory than was section 4283, Code of 1906, providing that all the subdivisions of a section shall be set down if they belong to different persons, which section as heretofore shown was held to be directory by this court in the case of *Moores* v. *Thomas, et al., supra.* Certainly, this performance of an administrative detail which was imposed upon the state tax commission could not be construed to be a power to legislate to the extent that the state tax commission could mandatorily require the separate assessment of land and timber.

## III.

THE ASSESSMENT IS NOT VITIATED BY FRAUD. It appears in this case that for the years 1919 and 1920 the land in question was assessed at one thousand one hundred dollars, and the timber thereon was assessed at three thousand four hundred and twenty dollars. For the years 1921 to 1923, inclusive, the same land appears to have been assessed as uncultivatable land at a valuation of eight hundred dollars. The intimation has been made by counsel for appellant that this is evidence of either actual or constructive fraud in the assessment. This contention will not meet the exigencies of appellant's case for two reasons: In the first place, this showing on the face of the assessment roll is not sufficient to establish such gross inadequacy of value as to constitute either

actual or constructive fraud. There are many things that might have entered into the reduction of the value. Subsequent to the year 1920 the timber may have been removed from the land, or else reduced to such an extent as to be valueless. The land may have been overvalued for the years 1919 and 1920, and such overvaluation may have, as it frequently does, escaped the attention of the taxpayer. In any event, there is nothing in the record to show that the valuation of the land for the years 1921 to 1923, inclusively, is grossly inadequate. There is no evidence that it is assessed wholly out of proportion to surrounding lands of like character. There is no evidence to show that the valuation was proper for the years 1919 and 1920, and that there was no change in the condition of the land or the market values for the years 1921 to 1923 inclusive. The court is not justified, therefore, on this record in saying that any fraud, actual or constructive, entered into the assessment of this land when the assessing officers, who certainly must be presumed to have acted in good faith, solemnly adjudicated the value of the land as shown by the assessment. In the second place, however, even if the assessment were void, it would not avail the appellant here. This is a proceeding to assess the appellee's property on the grounds that it has escaped taxation. This court has held in *State Revenue Agent* v. *Luce,* 87 Miss. 220, that where an assessment has in fact been made, even though void, the state revenue agent is not authorized to back assess the property as property which has escaped taxation.

Argued orally by *J. H. Sumrall,* for appellant, and *J. G. Holmes,* for appellee.

ANDERSON, J., delivered the opinion of the court.

Appellant, W. J. Miller, state revenue agent, back assessed for the years 1919 to 1923 inclusive the timber on the lands of the estate in Tishomingo county of Dr. Oscar Copeland deceased, of whose estate appellee, James Copeland, was administrator, claiming that it had es-

caped taxation for those years. This assessment by the
revenue agent was submitted to the board of supervisors
and was by the board disapproved. From that order ap-
pellant took an appeal to the circuit court, which ren-
dered a judgment affirming the decision of the board of
supervisors. From that judgment appellant prosecutes
this appeal.

The cause was heard upon an agreed state of facts.
Appellee's intestate paid all taxes whatsoever charged
against the lands in question for the years 1919 to 1923
inclusive. There was valuable timber upon some of the
lands. There was no separate assessment for the years
involved of the timber and the lands. Appellant claims
that for that reason the timber on the lands escaped taxa-
tion and was subject to back assessment by him under
section 4740, Code of 1906 (section 7058, Hemingway's
Code). On the other hand, appellee claims that the as-
sessment of the lands covered the timber and all the fix-
tures constituting part of the land; that all the different
elements of the lands were included in the assessment,
and therefore the judgment of the board of supervisors
approving the assessment is *res adjudicata* of the ques-
tion involved in this case. In other words, that the as-
sessment for each of the years involved of the lands, and
the approval thereof by orders of the board of super-
visors, is conclusive that the land and all of its elements
were assessed, including the timber, and therefore the
timber cannot be back assessed by the appellant.

Appellant, to sustain his position relies largely on
*Darnell* v. *State Revenue Agent* 109 Miss. 570, 68 So. 780.
We deem it sufficient to say of that case that under chap-
ter 89, Laws of 1912, as construed, a separate as-
sessment of lands and the timber thereon was expressly
required. But that statute is no longer in force. It was
repealed by chapter 135 of the Laws of 1918, and the
repeal was an express repeal. *Bailey & Bean* v. *Wilson,*
128 Miss. 49, 90 So. 362. Since the repeal of chapter 89,
Laws of 1912, the legislature has enacted no statute re-
quiring a separate assessment of lands and the timber

thereon. Appellant contends, however, that section 1, chapter 135, Laws of 1918, empowering and directing the state tax commission to prescribe "a form of tax lists to be used in the assessment of property for state and county purposes," construed in connection with the last clause of section 2 of said act, which provides that, "the assessor shall so fill all blanks on such rolls as to disclose clearly and fully each item of information indicated on said roll," is tantamount to a requirement that there shall be a separate assessment of the lands and their timber.

The tax commission, for the years involved in this case, prescribed tax lists to which the assessment rolls conformed, showing the following with reference to the assessment of lands: Columns for the description of the land; a column with the caption "Grand Total Valuation;" two columns with the caption "Cultivatable Lands," followed by subheads, "Number of Acres," "Valuation Excluding Buildings and Improvements;" another column with the caption, "Valuation and Improvements on County Lands;" then follow four columns with the common caption, "Timber Lands." Beneath that caption, at the head of separate columns are the following captions: (1) "Number of Acres;" (2) "Valuation, Excluding Timber;" (3) "Number of Thousand Feet Board Measure of Timber;" (4) "Value of Timber Thereon." Then come two columns with a common caption, "Uncultivatable Lands." Beneath that caption, at the head of each column are the following captions: (1) "Number of Acres;" (2) "Valuation Excluding Buildings and Improvements." Next is a column with the caption "Total Number of Acres of County Land." The final column is headed, "Total Valuation."

In *Bailey & Bean* v. *Wilson, supra,* it was held that section 1, chapter 135, Laws of 1918, authorizing and directing the tax commission to provide a form for tax lists was not a delegation of legislative power to the commission, and therefore not violative of section 33 of the Constitution. The court held that the power conferred

on the tax commission in that respect related to a mere administrative detail—that it was an administrative and not a legislative act. The court did not hold in that case and could not have held, that the statute in question conferred power on the tax commission to prescribe what property shall be assessed for taxes. The evident purpose of the legislature was to authorize the tax commission to prescribe forms for the lists and rolls with a view of better ascertaining the real value of the property. To that end the tax commission prescribed forms, which separated lands into their different elements. This was done for the information and consideration of the assessors in fixing values and of the board of super- visors in equalizing values. The dominant purpose was to arrive at the true value of the land, including all of its elements. The statute requires lands to be assessed for taxation at their true value. The statute, of course, is mandatory. The forms of lists and rolls prescribed by the tax commission are not mandatory to the extent that a failure to comply therewith would vitiate the assessment.

In *Adams* v. *Luce,* 87 Miss. 220, 39 So. 418, it was held that the statute authorizing the back assessment of property, that had escaped taxation by the revenue agent, applied only to property that had not in fact been assessed, and that where the assessment roll showed on its face there had been an assessment, although an illegal one, there could be no back assessment.

*Bailey & Bean* v. *Wilson, supra,* was decided after the repeal of chapter 89 of the Laws of 1912. The questions whether chapter 135 of the Laws of 1918 (the Tax Commission Act) was constitutional, and whether chapter 89, Laws of 1912, was repealed by chapter 135, Laws 1918, were not the only questions decided in that case. There was another question, and that was whether or not the timber on land, which had not been separately assessed from the land, had escaped taxation, so as to make it subject to back assessment by the revenue agent. The contention was that chapter 89, Laws of 1912 had not been

repealed by chapter 135, Laws of 1918, and therefore the timber could be back assessed under the statute, as held in *Darnell* v. *State Revenue Agent, supra.* The court held that chapter 89, Laws of 1912, had been repealed by chapter 135, Laws of 1918, and therefore there could be no back assessments of either the timber or the land. That decision meant that although the timber and the land were not separately assessed that the value of both was necessarily considered in determining the value of the land.

We have a case here where the entire interest in the lands involved, including their timber as well as all the other elements of their value, belonged to appellee's intestate. There was no separation of ownership of the timber and the land, and it is a case where the lands and their entire value necessarily came under the consideration of the assessor and the board of supervisors in the performance of their respective duties in reference thereto. The assessor and the board, in the nature of things, could not consider the value of the lands without considering the timber thereon and the houses and improvements, the amount of cleared and cultivated land and its quality, the amount of uncultivatable land, etc. In filling out the tax list by appellee's intestate he failed to make any entries whatever in any of the other columns than the ones provided for the description of the lands and their value. But the assessor and board of supervisors, in the performance of their duties, could not possibly consider and pass upon the value of the lands without passing upon the different elements going to make up their value, one of which was their standing timber.

We hold, therefore, that the orders of the board of supervisors approving the assessments for the years involved are *res adjudicata* of the question presented on behalf of appellant. And we hold further that the tax lists and rolls prescribed by the tax commission have not the force of law, although they are enforceable as administrative details when reasonable.

*Affirmed*

ETHRIDGE, J. (dissenting).

I am unable to agree with the opinion just delivered in this case, and will set forth my views with reference thereto. The following agreement of facts was entered into in the court below:

"It is hereby agreed by and between Guy Mitchell, attorney for plaintiff, and W. D. Conn, attorney for defendant, that the case may be tried on the following agreed statement of facts which are hereby agreed to be true and correct.

"(1) That if any assessment or all is found by the court to be proper, it is agreed that the several amounts in pencil shown on the assessments made by the sheriff, and now on file in this cause, are the amounts for which the several assessments should be made.

"(2) That on the assessment rolls for the several years carried by the said assessments, it is shown for all the lands herein, assessed as follows:

"A.   Grand total valuation.

"B.   Number of acres of uncultivatable land.

"C.   Valuation excluding buildings and improvements.

"D.   Number of acres of county lands.

"E.   Other columns blank.

"And that all said assessments were paid according to assessment.

"(3) That the tax rolls upon which all the assessments were made have the following columns:

"A.   Grand total valuation.

"B.   Cultivatable land.

"A.   Number of acres.

"B.   Valuation excluding buildings and improvements.

"C.   Valuation of buildings and improvements on county lands.

"D.   Timber lands.

"A.   Number of acres.

"B.   Valuation excluding timber.

"C.   Number of thousand feet board measure of timber.

"D.    Valuation of timber thereon.

"E.    Uncultivatable land.

"A.    Number of acres.

"B.    Valuation, excluding buildings and improvements, of total number of acres of county lands. All other columns not applicable.

"(4)    That the clerk may copy the original assessments as shown on the several rolls involved in this suit and file same as a part of the record in this cause.

"(5)    That the timber involved in this suit was owned by Dr. Oscar Copeland at the time covered by this assessment; that the said Dr. Copeland under contract was to pay and did in fact pay all assessments made upon the lands upon which this trial involved in this suit was standing.

"(6)    It is further agreed that the clerk shall copy all the assessments of the lands involved in this suit as shown by the rolls for the years 1917 and 1918, and for 1919 and 1920.

"(7)    That notice of the assessments as required by law was given before the board of supervisors on the assessments involved in this suit.

"Witness our signatures at Iuka, Mississippi, this the 20th day of August, 1924. [Signed]  Guy Mitchell, Attorney for Plaintiff.  W. D. Conn, Attorney for Defendant."

Section 1, chapter 323, Laws of 1920, amending chapter 135 Laws of 1918, reads as follows:

"That the state tax commission be and they are hereby authorized to furnish each clerk of the board of supervisors with a sufficient number of suitable assessment rolls for assessing the real and personal property in each county, and they are further empowered to have such rolls properly ruled and headed in every particular, and to prescribe the form of such rolls. The rolls must be furnished to the clerks on or before the 1st day of January of each year; but land rolls shall be furnished only in those years when land assessments are made."

This section is identical with section 1, chapter 135, Laws of 1918. As I understand, this section gives to the state tax commission the full power to make up the roll in such form as to secure a fair statement of the taxable property of the taxpayer. The form of the roll with the headings, rule etc., is fully authorized, and has the same force and effect as though the legislature itself had prescribed the form of the roll. Of course, the tax commission has nothing to do with whether property is taxable or nontaxable, but they have the duty and are given the power and authority to make up a proper roll for a taxpayer to be guided by in making out his tax returns, and to bring to the attention of the taxing authorities not only the property itself, but every fact and circumstance connected therewith as might affect the knowledge and judgment of the taxpayer and the taxing authorities.

In conformity to this power, the tax commission made up a form in which the name of the owner was listed in one column, division of section or subdivision of land in another, the number of the section in another, the township in another, range in another, column for number of the receipt, column for the grand total valuation of the land, column for the number of acres of cultivatable land, column for the valuation thereof, excluding buildings and improvements a column for the number of acres of timbered lands, a column for the valuation in dollars excluding timber, a column for the number of thousand feet board measure of timber, a column for the valuation of the timber thereon, a column for the number of acres of uncultivatable lands, a column for the valuation of uncultivatable lands excluding buildings and improvements, and other columns, and a total valuation column. This list is made up in such form as to direct the attention of both the taxpayer and the taxing authority to the several separate elements of value.

By section 4264, Code of 1906 (Hemingway's Code, section 6898), it is provided:

"The assessor shall call upon each person liable to taxation of his county for a list of his taxable personal

property, either in person or by leaving a written notice at his usual place of residence or business; and each person shall, when required, make out and deliver to the assessor a true list of his taxable personal property, with the value of each article, specifying all such property of which he was possessed on the 1st day of February preceding in his own right, or in the right of his wife, or as executor, administrator, guardian, trustee, or otherwise, rendering separate lists of the property of each. Each list shall be verified by oath, which the assessor is authorized and required to administer to each person, before such person makes out the list of his assessment," etc. (setting forth the oath to be administered).

Section 2, chapter 323, Laws of 1920 (section 2, chapter 135, Laws of 1918), reads as follows: "The assessors shall annually assess the polls and all property subject to taxation in their respective counties. They shall set down in the assessment rolls the names in full of all persons liable to taxation in the county in alphabetical order; and when there are on the roll more than one person of the same name, the place of residence of each shall be shown, or they shall be otherwise so designated as to identify each and distinguish them. The assessor shall so fill all blanks on such rolls as to disclose clearly and fully each item of information indicated on said roll."

It is provided in this section specifically that: "The assessor shall so fill all blanks on such rolls as to disclose clearly and fully each item of information indicated on said roll."

This section gives effect and makes mandatory upon the tax assessor the duty of filling in each column of the assessment with the information called for by the column. Thus the roll made by the tax commission is specifically and clearly adopted by the legislature, and such roll must have the information called for. If the column is not filled in, the equalizing authorities must assume that the taxpayer has no such property, or that there is nothing in existence which the column called for. If the roll does not indicate the number of feet of timber on the land, it

is not brought into view of the taxing authorities. If the taxpayer does not list his timber on the blanks furnished him and does not place the value thereon, the taxing authorities have the right to assume that he has no timber thereon of commercial value. It is presumed in law that the taxpayer has listed everything required of him to be listed which he possesses. The assessor may rightfully assume, in the absence of personal knowledge, that the taxpayer has no such property as the column called for.

In the case before us it was the duty of the taxpayer to list his estimated timber on his lands in the appropriate column and to place his estimate of the value of the timber in the appropriate column therefor. When he does not do so, he has not listed his property as required by law, and nothing is brought by law to the attention of the taxing authorities, and consequently they are not called upon by the roll to adjudicate the value or existence of property not indicated upon the roll. Of course, if any of the taxing authorities know of such property, they may list it in the appropriate column and place their estimate of value thereon, but they are not called upon to value timber unless timber is listed. It is manifestly impossible for either the assessors or the board of equalizers to know what each acre or subdivision of land in the county contains, or what the character of such land is. It would be manifestly impossible for the assessor and board of equalizers to personally go upon and estimate and inspect each acre of land or each subdivision of land to see whether it had timber growing thereon, or not. The law imposes the duty upon the taxpayer to disclose his property under oath. The assessor and the board have the right to assume that he has truly listed his property, and no judgment can be *res adjudicata* where the pleadings, or what may be in lieu of pleadings, do not state the facts calling for adjudication. The decision rendered in this case is contrary to the principles underlying our decisions in the past.

In *Darnell* v. *Johnson, State Revenue Agent,* 109 Miss. 570, 68 So. 780, it was held that where the assessment roll did not disclose the facts called for by the columns of the assessment roll, that such property was not embraced in the judgment, and that timber omitted from the roll was not in fact assessed. Certainly the roll we have before us is a legal roll. The legislature has expressly authorized the tax commission to make up the roll, as the tax commission thinks proper to elicit the necessary information for the proper taxation of property. The taxpayers and the taxing authorities are required to use the roll so made up, and to fill in in the appropriate column whatever information is called for thereby.

In *Adams, Revenue Agent,* v. *Clarke,* 80 Miss. 134, 31 So. 216, it is held that the approval of an assessment by the board of supervisors is not conclusive that the taxpayer has listed, or that the roll contains all of the taxable property owned by him. Such approval, under the law, as it then existed was an adjudication of the property listed as to its value. The approval of a tax assessment, so far as respects *res judicata* rests upon the same basis as other judgments, and he who claims the approval as *res judicata* must show that all of his taxable property was passed upon by the board of supervisors; that property not brought to the attention of the board is not assessed at all by a judgment approving an assessment of other property. There are numerous other cases, involving back assessments, which hold that if the property is not listed on the roll that it is not assessed by the roll, and that it may be back assessed.

The present decision, as I think, is a total departure from these principles. The taxing statutes should be construed so as to promote fairness rather than to promote fraud. It is wholly unfair to the taxpayer who lists his property, complying with the law in giving the elements of value that enter into it as called for by the blanks furnished him and by the assessment roll, to permit a person who withholds his property, or withholds the elements of value called for by the tax blanks and tax rolls,

139 Miss.—52.

to wholly escape his fair and just share of the common burden of taxation. When a back assessment is made, it is like any other assessment to be treated in valuing it not only as to its actual value, but as to its value compared to the assessed value of other property in the county of his residence. The back assessment must be treated as though it was an original assessment, and its value equalized with the assessed value as well as the actual value of the property in the county.

. In the case before us, the value of the timber has wholly escaped assessment because the taxpayer knowingly and fraudulently withheld the information called for, and, by so doing, escaped a proper assessment, is given an immunity bath, and is permitted to profit by his fraud.

Cook and HOLDEN, JJ., concur in this dissent.