# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CT-00792-SCT

*ENTERPRISE PRODUCTS COMPANY*

*v.*

*BOARD OF SUPERVISORS OF FORREST COUNTY, MISSISSIPPI, AND PETAL SCHOOL DISTRICT*

### ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 07/15/95 |
| TRIAL JUDGE: | HON. W. M. O'BARR, JR. |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | F. M. TURNER, III |
| ATTORNEYS FOR APPELLEES: | WILLIAM HAROLD JONES |
| | EUGENE L. FAIR |
| | JEFFREY HOLLIMON |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED; JNOV IS REINSTATED - 5/14/98 |
| MOTION FOR REHEARING FILED: | 6/1/98; denied 2/11/99 |
| MANDATE ISSUED: | 11/29/99 |

**EN BANC.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This appeal originated from the Circuit Court of Forrest County, which heard the matter on an appeal by Enterprise Products Company, hereinafter Enterprise, from a decision of the Board of Supervisors of Forrest County to back assess certain property that it had determined had "escaped taxation" under the meaning of Miss. Code Ann. § 27-35-155 (1972) as amended. The jury empaneled to hear the matter before the special judge found in favor of Enterprise. The trial court, finding the matter to be an issue of law, not fact, set aside the jury verdict and granted the county's motion for JNOV. On appeal, the matter was assigned to the Court of Appeals. The Court of Appeals found that the property had not "escaped taxation" under the statute by application of prior decisions of this Court, primarily *Miller v. Copeland's Estate,* 139 Miss. 788, 104 So. 176 (1925), and reversed the JNOV , reinstating the jury verdict. This Court having granted Writ of Certiorari, finds the Court of Appeals' majority analysis to be in error, and accordingly, we reverse.

## FACTS

¶2. Enterprise Products Company (hereinafter "Enterprise") owns certain tracts of real property in Forrest County, Mississippi which are situated on geologic formations known as salt domes. A practice of injecting water into these domes to dissolve the salt leaves the caverns suitable for storage of liquified petroleum products and has been in use for a number of years. The caverns were already in existence and in use when Enterprise acquired the property. The only visible evidence of these structures from the surface are "injection wells" which resemble, to some degree, any other oil or gas well or salt water disposal wells. Prior to 1993, the tax assessor had been under the impression that they were to be treated as gas wells which are not taxable.

¶3. However, in 1993, the Mississippi Attorney General issued an opinion stating that the caverns were taxable as permanent improvements to real estate within the meaning of Miss. Code Ann. § 27-35-49 (1995).[1] The opinion also stated that the caverns were subject to back assessment under Miss. Code Ann. § 27-35-155 (1995). After reassessment, the value of the subject property increased from $6,780.00 to more than $4,700,000.00. Enterprise does not contest the reassessment.[2] However, it contests the authority of the assessor to retroactively assessor "back assess" for prior years under that section of the code.[3] Enterprise claims that its property, though it may have been erroneously assessed, did not escape taxation by virtue of not being assessed within the meaning of the statute.

¶4. The Forrest County Board of Supervisors ruled that the back assessment was proper, and Enterprise appealed that decision to the circuit court. The matter was tried before a jury, and the jury ruled in favor of Enterprise. The special judge appointed to hear the matter, granted a motion for judgment notwithstanding the verdict in favor of the county and school district ruling that the only issue submitted to the jury, that of the application of the term "escape taxation" to the uncontroverted facts of the case, was one of law which should never have been submitted to the jury, and that under the facts, the property of Enterprise had, as a matter of law, escaped taxation for the years 1987 through 1992. The matter was then appealed to this Court and assigned to the Court of Appeals. The Court of Appeals reversed the trial judge and reinstated the jury verdict, while acknowledging the issue was one of law, not fact.

¶5. The sole issue remains whether the salt dome caverns "escaped taxation" under the meaning of Miss. Code Ann. § 27-35-155 (1995) and thus are subject to assessment of back-payments on unpaid taxes. Neither the amount of the new assessment, nor the validity of current and prospective taxation of the property is controverted. It is also undisputed that:

1. Both Enterprise and the tax assessor were aware of the domes and caverns.

2. The tax assessor and the supervisors believed the improvements were to be treated by them as "gas wells" which are not taxable, and accordingly, did not value them or include them in the appraised or assessed value of the property.

3. Enterprise never filed the property tax assessment statement or return prescribed by Miss. Code Ann. § 27-35-49 (1995) although it did file necessary forms to remove improvements such as burned or demolished structures, from the assessment rolls.

**Analysis**

¶6. The Court of Appeals' opinion primarily relied on the case of *Miller v. Copeland's Estate,* 139 Miss. 788, 104 So. 176 (1925) as controlling in this matter. As the Court of Appeals' dissent pointed out, there are both factual and legal distinctions between that early case and this appeal.

¶7. In *Miller,* the tax assessor failed to include the value of standing timber for a period of approximately three years in his assessments which had been approved, according to statute, by the board of supervisors. Until 1920, the timber had been assessed separately, and the landowner did make an assessment return on the property but failed to mark a box for timber and indicate its value. The assessor used the landowner return forms in preparing the assessment rolls and same was approved by the board. The Court held that the timber did not escape taxation within the meaning of the statute by reasoning that:

> We have a case here where the entire interest in the lands involved, including their timber as well as all the other elements of their value, belonged to appellee's intestate. There was no separation of ownership of the timber and the land, and it is a case where the lands and their entire value necessarily came under the consideration of the assessor and the board of supervisors in the performance of their respective duties in reference thereto. The assessor and the board, in the nature of things, could not consider the value of the lands without considering the timber thereon and the houses and improvements, the amount of cleared and cultivated land and its quality, the amount of uncultivatable land, etc. ***In filling out the tax list by appellee's intestate he failed to make any entries whatever in any of the other columns other than the ones provided for the description of the lands and their value. But the assessor and board of supervisors, in the performance of their duties, could not possibly consider and pass upon the value of the lands without passing upon the different elements going to make up their value, one of which was their standing timber.***

*Miller,* 139 Miss. at 811, 104 So. at 178 (emphasis added).

¶8. In this case, the caverns had never been assessed a value. The tax assessor was not aware that the caverns were even subject to taxation, as he had previously considered them as untaxable gas wells. It was not until the Attorney General issued an opinion letter that these caverns were in fact improvements subject to taxation that the assessor became aware of their true nature. As noted in *Miller*, the timber, due to a special statute long since repealed, was required to be assessed separately and had been so assessed until approximately 1920. Furthermore, the assessment return filed by the landowner had a space for timber which was unmarked, yet still approved by the assessor and the board. The Court held that the assessor's failure to include its value in his assessment for the subsequent years was *res judicata* as the board's decision had affirmed his assessment and was a final determination thereof. Also, Justice Ethridge noted, in the dissent to *Miller,* filing of this landowner's assessment return is a prerequisite to the "immunity bath" from back assessment afforded by the majority in that case. In the present case, the landowner never filed such a return, and therefore can not avail himself of the protection afforded thereby as was done in *Miller*.

¶9. Here, there is nothing showing that the improvements (caverns) had ever been considered in determining the value of the property. To the contrary, the evidence showed that the tax assessor was aware of the existence of the structures as untaxable gas wells but was not aware of their true nature

as storage facilities. The landowner never filed the requisite return and therefore cannot avail himself of the *res judicata* argument upon which *Miller* is almost wholly based.[(4)] Judge King, in writing the Court of Appeals' dissent was therefore quite correct in determining that this case should be distinguished from *Miller* in finding that:

> In Miller, the tax assessor 1) was aware of the existence of the timber, 2) was aware that the timber was subject to taxation, 3) was aware that the tax form included thereon a separate block for taxation of timber, 4) had until 1920, taxed the timber separately, and 5) allowed the tax statement to be prepared without separately assessing the timber.

> In the present case, the tax assessor 1) was aware of the storage cavern, 2) was unaware that the storage cavern was subject to taxation, and 3) had no box on his form to tax a hole in the ground, which is what the storage cavern is.

> A hole in the ground in and of itself is not subject to taxation, rather it is only when its use makes it an improvement that it becomes subject to taxation. It was not until the attorney general issued an opinion that this hole in the ground was an improvement subject to taxation, that either of the parties became aware of its taxable nature.

> I therefore believe this case should be distinguished from Miller.

¶10. Enterprise strongly argues that *Miller*, as well as *Adams v. Luce*, 87 Miss. 220, 39 So. 418 (1905), *Robertson v. Bank of Yazoo City,* 123 Miss. 380, 85 So. 177 (1920), *Long Bell Co. v. McLendon,* 127 Miss. 636, 90 So 356 (1922), *Gully v. J.J. Newman Lumber Co.,* 178 Miss. 312, 172 So. 740 (1937), *Gully v. Mississippi Valley Co.,* 181 Miss. 669, 180 So. 745 (1938) stand for the proposition that once an assessment has been made, even though erroneous, the statute does not allow back assessment. In other words, it argues that the language in the statute limiting back assessment to property "escaping taxation by reason of not being assessed" allows back-taxation only of property being totally omitted from the tax roll. Indeed, this would be true if the back assessment were made for the purposes of collecting back taxes on the basis of an increased valuation alone.[(5)] Here, we are faced with the situation where valuable improvements to the property were erroneously, but knowingly and intentionally, never assessed a value nor included in the total assessment of the property. This fact is acknowledged by the parties. It is also obvious, because of the nature of the improvements as caverns, they are inherently a part of the real property. None of the earlier cited cases appear to be of much help under these facts, and there is no recent Mississippi precedent for guidance.

¶11. The Supreme Court of the State of Florida was, however, more recently faced with a nearly identical situation. In *Korash v. Mills,* 263 So.2d 579 (Fla. 1972), the unimproved beachfront property in question had an assessed value of approximately $175,000.00 and the landowner was taxed on that basis for the years 1966 and 1967. In 1966, the owner of the property constructed a motel on the property. The assessor was apparently aware of the new construction and prepared an assessment of the improvements on a separate "card" in 1967, however through clerical error, the value of the motel was not included on the tax rolls until 1968.[(6)] The new assessment totaled more than $800,000.00. In that case, as in this one, the amount of the new assessment was not an issue, but rather the attempt to collect the back taxes for the year 1967 was contested. The Florida statute allowing back assessment, F.S.A. § 193.092, is remarkably similar to Miss. Code Ann. § 27-35-155

(1995). That Court was also faced with a similar lack of precedent which becomes apparent when it was noted:

> It will be seen however that in these prior cases the increase has been an attempted increase in amount only (after an assessment of the improvement for a total lesser amount) and not instances where the entire improvement was skipped and failed to be noted at all for taxation because of error or oversight as in the present case.

*****

> The back assessment sub judice is not viewed merely as 'clerical' under Fla. Stat. § 192.21 (now § 197.011), F.S.A., for it is more serious than that. The types of clerical corrections under this statute are rather limited. Neither is it a total escape of taxation but it is a partial one under § 193.23 (now § 193.092), F.S.A., and is within that statute's purview for 're-capture.'

> We must keep in mind the distinction between changes and 'miscalculations' by the assessor which 'up' the amount previously assessed after tax roll certification, and the situation here where there has been no billing at all on the improvement (or it could be a separate, 'overlooked' parcel of land) which has been completely excluded from the tax roll. This is obviously a mistake, error, oversight, which cannot be prejudicial to the taxpayer as in those cases where a change in judgment by the tax assessor was involved, belatedly increasing the valuation which had in fact earlier been assigned and entered on the tax roll. In those cases the assessor had initially assessed all of the taxpayer's property including both land and improvements and in each of the cases the attempt was to increase the valuation of property already included (or considered and rejected as in *Friedland*) in the assessment.

*Id.* at 580-81 (footnotes omitted). In finding that the improvements in question, i.e. the motel, had indeed "escaped taxation" that court held:

> It is the judgment of the assessor that is involved: if he seeks to change his judgment on a valuation which properly includes all of the 'real property' as defined in the statute § 192.001(12), after certification of the tax roll, a change 'reevaluating' the amount will not be allowed, in accordance with our previous holdings. If there is no new judgment being exercised, and property not theretofore included is just late in being enrolled and billed, as in the circumstances here, it is a proper assessment and is payable under § 193.092 as 'escaped' property. . . .The statute was provided as a means to insure that the tax roll speaks the truth and truly reflects tax assessments on an equal basis.

> Thus we have here an instance where the principal value of the property has indeed 'escaped' taxation which is fairly within the contemplation of Fla. Stat. § 193.092, F.S.A. It would be an extremely inequitable and unjust result for a court of equity to grant to a knowing taxpayer an outright 'windfall' of $25,000 which was the additional tax he admittedly escaped for the year in question.

> Justice may be 'blind' but it is not stupid. Impartial fairness and equality is what the blindfold represents. We cannot condone a taxpayer's blithely asserting refined definitions of single

assessments and separate billings when he so clearly knew that there was no tax bill whatever for the improvement of a $650,000 motel. The 1967 assessment and tax billed was precisely the same as in 1966 when the land was bare. Any taxpayer would realize that he has 'escaped' a new substantial tax on a new building which he knew would be forthcoming. In this instance Petitioner Madorsky is described as one of the leading and most successful motel operators in Daytona Beach, a licensed real estate broker and involved in the operation of large motel properties and in the payment of taxes thereon. There is no inequity--except to petitioners' taxpaying fellow 'sufferers' if allowed to prevail.

We agree that single assessments are the usual case and should be employed but cannot concur that the definition of real property to include both land and improvements will avoid the payment of a just and proper assessment which was simply not billed in the correct year so far as the improvements are concerned.

*Id.* at 581-82 (footnotes omitted). The parallels to the Florida case and this one are obvious. The salt domes had never been considered as improvements or even as taxable. They were not given a $0.00 value, they had simply not been included at all due to the assessor's previous understanding that they were gas wells and not taxable. As in the Florida case, this is not a case of "total escape of taxation, but it is a partial one" and as such, a narrow exception to the rule in *Miller v. Copeland's Estate,* 139 Miss. 788, 104 So. 176 (1925). The non-assessment of the storage caverns is within the purview of the statute allowing back-collection of the previous years' taxes. The decision of the Court of Appeals is reversed and the Order of the trial court granting the JNOV is reinstated.

¶12. **THE DECISION OF THE COURT OF APPEALS IS REVERSED AND RENDERED. THE ORDER OF THE TRIAL COURT GRANTING JNOV IS REINSTATED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**

1. This statute provides:

§ 27-35-49. Assessment of lands; appraisal according to true value.

It shall be the duty of the tax assessor to assess all the lands in his county and he shall require the owner, agent, or person having possession, or charge, of any lands, to render a list of all lands owned, or in charge, or in possession, of such owner, agent, or person, and land shall be appraised according to its true value and assessed in proportion thereto, taking into consideration the improvements thereon.

*Every person owning or being in possession, or in charge, of any land shall deliver to the tax assessor on demand, and in any event, not later than April first in each year, a list of all lands owned by, or in possession, or in charge, made out on the tax lists prescribed; and showing the total number of acres (except the land be platted by blocks and lots), the total number of acres of cultivatable lands and the value thereof, and the number of acres of*

***uncultivatable land and the value thereof and the number of acres devoted to agricultural purposes; and buildings or improvements subject to taxation on any lands returned for assessment.*** If the lands be surveyed and platted, it shall be returned so as to clearly identify it by the recorded plat thereof, and the list rendered shall disclose the value of each lot and the value of any buildings, structures, or improvements thereon. Any person required by this section to render a list of any lands shall show in what road district, school district, levee district, municipality, or other taxing district, the same is located. ***If any person shall deliver or disclose to an assessor, or deputy assessor, a list, statement, or return in regard to his land which, in the opinion of the assessor, or deputy assessor, is false or fraudulent, or contains any understatement or undervaluation, or fails to show the proper classification of lands, or fails to show buildings and improvements, or other elements of value, the assessor shall make an assessment of the land with the proper classification thereof including the omitted things, at a valuation equal to the value at which like lands similarly situated are assessed. Lands not given in by any person shall be assessed in the same manner by the assessor at a valuation equal to the assessment of other like lands similarly situated and all buildings and improvements, or other elements of value shall in all cases be separately valued and assessed.*** (emphasis added).

2. The current figure represents a compromise reached between Enterprise and the Board of Supervisors. The original assessment was apparently much higher.

3. Section 27-35-155 of Miss. Code Ann. (1995) reads as follows:

> When the assessor shall discover any persons or property that have escaped taxation in any former year or years, or shall discover that any person or property is escaping taxation for the current year, ***after the final approval of the assessment roll,*** as provided by section 27-35-127, Mississippi Code of 1972, ***by reason of not being assessed,*** he shall make the proper assessment by way of an additional assessment for such year or years, distinctly specifying the property, its location, its value, the name of the owner, if known, and the year or years it has escaped assessment and taxation, separately assessing the person or property for the current year. When such assessments are completed, he shall file the same, under his affidavit, with the clerk of the board of supervisors; and shall at the same time notify the board of supervisors, in writing, of the assessment. The power of the assessor to assess property that has escaped taxation by way of additional assessments for a former year or years shall expire at the end of the seven (7) years from the date when his right so to do first accrued.

> No leasehold interest in any property, real or personal, belonging to the state of Mississippi, counties, districts, municipalities or any political subdivisions, shall be subjected to ad valorem taxation for any past year on the basis of it having been omitted from the ad valorem tax rolls.

(emphasis added).

4. The property assessment return referred to in Miss. Code Ann. § 25-35-49 (1995) has fallen into disuse in recent years. The record shows in this case that the tax assessor of Forrest County received only two such forms out of more than 36,000 tracts. The viability of the statute has, however, been affirmed by this Court as recently as this year in *Madison County v. Lenoir* 695 So. 2d 596 (Miss.

1997).

5. Examples would be an increase in valuation due to an erroneous assessment of the entire property in previous years; erroneous entries in previous years; improper classification of property, i.e. agricultural, commercial, etc.

6. Through clerical error, the card reflecting the value of the buildings was not attached to and became separated from the card reflecting the value of the unimproved property. The assessor did not change the value of the land, rather he intended only to add the value of the improvements to the total assessment.